JAMES W. GRAHAM, Plaintiff and Respondent, v. JEAN ROLANDSON, Defendant and Appellant.

No. 11080.
Submitted September 14, 1967. Decided November 30, 1967.
Rehearing denied December 20, 1967.
435 P.2d 263.

Herron & Reber, Helena, Patrick F. Hooks, Townsend, Clayton R. Herron (argued), Helena, for appellant.

Rankin & Acher, Helena, Arthur P. Acher (argued), Helena, Larry O. Foss (argued), Townsend, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by defendant from a judgment rendered against her in the sum of $15,915.60 in the district court of Broadwater County following a jury trial, and after defendant's motion for new trial had been denied. The suit in question is a wrongful death action by the father of an eight and one-half year old boy who, while riding a bicycle, was struck by an automobile driven by defendant.

This tragic accident occurred during the afternoon of May 7, 1963, on a city street in Townsend, Montana. At the time the accident occurred, it was broad daylight on a clear, sunny spring day. The road surface where the accident occurred was gravel and the roadway was dry. Jean Rolandson (hereafter referred to as defendant) was driving a 1960 Oldsmobile four-door equipped with power brakes and was carrying the following passengers: Defendant's daughter Nancy, age 5½, was riding in the front seat next to the right front door; defen-

dant's son Michael, age 1½ was riding in the middle of the front seat between defendant and Nancy. Defendant was driving easterly on B Street and crossed the intersection at Spruce Street, which latter street runs at right angles to B Street. After crossing this intersection, defendant proceeded east on B Street in the eastbound lane of travel. At a point about 45 feet east of the east boundary of the intersection in defendant's lane of travel, the front end of defendant's Oldsmobile struck the bicycle on which James Perry Graham (hereafter referred to as the deceased boy) was riding. This resulted in the deceased boy becoming wedged under the defendant's car between the oil pan and the road surface from which he suffered injuries resulting in his death the following day.

James W. Graham, the father of the deceased boy, and hereafter referred to as plaintiff, filed his complaint seeking damages for the wrongful death of his son. The complaint alleges negligence on the part of defendant on two theories: (1) standard negligence in various specified particulars; and (2) negligence based on the doctrine of "last clear chance."

Defendant's answer contains two defenses: (1) denial of any negligence on her part; and (2) contributory negligence on the part of the deceased boy.

Plaintiff thereafter filed his reply directed at the defense of contributory negligence and containing two contentions: (1) a general denial that the deceased was contributorily negligent; and (2) a contention that an eight year old boy is incapable of contributory negligence as a matter of law.

The action proceeded to jury trial on the basis of these pleadings and the issues framed therein. No eye witnesses to the accident testified at the trial other than the defendant who testified by deposition. The substance of her testimony insofar as it is pertinent to the issue of liability can be summarized in this manner: She was driving east on B Street and as she approached the Spruce Street intersection, she slowed down almost to a stop. She looked both ways, saw no cars or children

in the street, and proceeded through the intersection. At some point before reaching the alley she saw a "blur" on her windshield, applied her brakes, felt her car hit something but was not sure at first what it was, got out of her car when it came to a stop, and discovered that she had struck a boy on a bicycle who was presently wedged under her car. She thinks that the boy on the bicycle came diagonally across B Street traveling in a southeasterly direction. She could have turned left to avoid the boy on the bicycle. She does not know whether she pulled her car to the right upon seeing "the blur" and applying her brakes, or whether she was traveling on the same line as where her car came to a stop following the accident. She was not traveling very fast at the time of the accident.

Beyond this deposition of the defendant, reconstruction of the facts of the accident at the trial was dependent upon physical facts observable at the accident scene, the testimony of witnesses concerning condition existing in the accident area shortly before and shortly after the accident, statements allegedly made by defendant at the accident scene and thereafter, and expert opinion evidence as to the speed of defendant's automobile based upon tests and hypothetical assumptions.

It must be noted that there is no direct testimony or evidence as to how the deceased boy got from the steps of the porch on the Masonic Lodge where he was playing immediately prior to the accident to the point where he was struck on his bicycle by defendant's automobile. The Masonic Lodge is located more or less on the northeast corner of the intersection of B Street and Spruce Street, but sits back an undetermined distance from the curb line of both streets; the porch with the steps on which the boy was playing fronts on Spruce Street. There was no other traffic on B Street at the time and place of the accident, but there is a conflict in the testimony as to whether or not there was a pick-up parked parallel to the curb on the north side of B Street. The physical lay-out in the area of the accident would tend to indicate that there was no obstruction

to visibility by the defendant or the deceased boy for a considerable distance before they arrived at the point of impact.

During the course of the trial, undisputed testimony disclosed that the deceased boy was born on October 19, 1954, making him exactly eight years, six months and eighteen days old at the time of the accident; that he was in the second grade at school; and that he lived with his parents in Townsend on Spruce Street across from the Masonic Temple in the general area of the accident in question.

At the conclusion of plaintiff's case in chief and again at the conclusion of all the evidence, defendant moved for a directed verdict which was denied. Upon settlement of jury instructions the issue of contributory negligence of the part of the deceased boy was removed from the jury's consideration. The court refused all of defendant's offered instructions on the issue of contributory negligence on the part of the deceased boy and gave the jury the following instruction:

"You are instructed that the court has determined as a matter of law that the child, James Perry Graham, was incapable of contributory negligence as a matter of law."

Appropriate objections were made by defendant to the giving of this instruction and the removal of the issue of contributory negligence from the jury's consideration.

The jury returned a verdict in favor of plaintiff in the sum of $15,915.60 and judgment was entered thereon. After defendant's motion for new trial was denied, this appeal followed.

The issues presented for review by defendant upon this appeal can be broadly summarized in the following manner:

(1) The Court's instruction to the jury that the deceased boy was incapable of contributory negligence as a matter of law and the refusal of the Court to give defendant's offered instructions on contributory negligence.

(2) The admissibility of witness Lyons' testimony as to the speed of defendant's car in response to a hypothetical question;

(3) Failure of the trial court to instruct the jury on "unavoidable accident";

(4) Refusal of the trial court to instruct the jury on the "sudden emergency" doctrine; and

(5) Refusal of the trial court to grant a directed verdict in favor of defendant.

In our view the first issue presented for review as set forth above involves two questions: (1) Was the trial court correct in instructing the jury that the deceased boy was incapable of contributory negligence as a matter of law and in refusing defendant's offered instruction on contributory negligence? and (2) if not, does the trial court's action constitute reversible error? We answer both questions in the negative based upon the authorities and reasoning hereafter set forth.

At the outset it is to be noted that this is a case of first impression in Montana on the question of the incapacity or incapability of a child seven years of age or older to be contributorily negligent as a matter of law. To date, Montana cases have not distinguished between the capacity or capability of such child to commit contributory negligence and the related question of whether or not a particular child in a given situation was in fact contributorily negligent. However, it is clear that the law relating to contributory negligence of children involves a dual inquiry: (1) The *capacity* of a particular child in a given case to be contributorily negligence; and (2) the *establishment in fact* of the particular child's contributory negligence under the circumstances of a given case. Illustrative of cases recognizing these two facets of the inquiry are the following: Patterson v. Cushman (Alaska 1964), 394 P.2d 657, 6 A.L.R.3rd 421; Dixon v. Stringer, 277 Ky. 347, 126 S.W.2d 448; Jackson v. Butler, 249 Mo. 342, 155 S.W. 1071.

Our first inquiry in the instant case is directed at the first of these two considerations. It has long been the law of Montana that a child under seven years of age cannot be contributorily negligent as a matter of law. (Burns v. Eminger, 81

Mont. 79, 261 P. 613; Johnson v. Herring, 89 Mont. 422, 300 P. 535; Gilligan v. City of Butte, 118 Mont. 350, 166 P.2d 797.) The Burns case, supra, decided in 1927, is the leading Montana case enunciating this rule. The basis for this rule, as indicated in Burns, is that a child of such tender years is *non sui juris*, that is, lacking the capacity to manage his own affairs. Stated another way, a child under seven years of age is conclusively presumed to lack the capacity to manage his own affairs which includes, among other things, the capacity to look out for his own safety. Thus it may be said that Montana law raises a conclusive presumption that a child under seven years of age lacks the *capacity* to be contributorily negligent. Whatever may be said as to the arbitrary nature of this rule and whatever criticism may be leveled at such a rule in theory, it has been the law of Montana for forty years.

With this background, we proceed to a determination of the law in Montana regarding the *capacity* of an eight and one-half year old boy to be contributorily negligent. Are there are presumptions as to capacity or incapacity in such case? There have been no direct holdings in Montana as to any presumptions as to such capacity or incapacity of a child after he has reached his seventh birthday. The law is in hopeless and irreconcilable conflict in other jurisdictions. At most four states hold that a child eight years of age is conclusively presumed to be incapable of contributory negligence; many jurisdictions hold that there is a prima facie or rebuttable presumption of incapacity in the case of a child eight years of age; a few jurisdictions appear to hold that there is a rebuttable presumption of capacity in an eight year old; but probably the vast majority of states establish no presumption as to capacity or incapacity of an eight year old to be contributorily negligent, but consider it a question of fact in the individual child under the circumstances of the individual case. (See 107 A.L.R. 4 and 77 A.L.R.2d 917, for collection of cases from all jurisdictions.) This latter view is well expressed in David v. West Jer-

sey & S. R. Co., 84 N.J.L. 685, 87 A. 440, involving a boy seven years ten months old struck by a train at a railroad crossing:

"There has been a time in the life of every person of mature judgment, as all agree, when he was incapable of exercising the care and judgment necessary to avoid and avert danger, and was *non sui juris*. There is a time also, when he is in law an adult, and responsible as such. Between these two periods is a transition stage, during which his responsibility depends upon matters of fact. * * * In this transition period he may or may not be guilty of contributory negligence. * * *

"* * * And so, in order to determine whether a child in such transition period has been guilty of contributory negligence, it is necessary to take into consideration the age of the child, and its experience, and capacity to understand and avoid the danger to which it is eyposed in the actual circumstances and situation under investigation * * *."

■■ We feel that the above quotation expresses the better rule for the reasons therein stated. Accordingly we hold that there is no presumption one way or the other as to the capacity of an eight and one-half year old boy to be contributorily negligent. We further hold that such question of capacity is a factual inquiry to be determined with regard to the individual child under the circumstances of the individual case.

■■ Such being the law, is the question of capacity of the individual child in a given case to be determined by the judge or by the jury? The same rules apply here that apply to any factual inquiry. Generally speaking, questions of fact are for determination of the jury; it is only in cases where the facts admit of only one interpretation by reasonable men that the judge can decide the question as a matter of law. The case of Bush v. New Jersey & New York Transit Company, 30 N.J. 345, 153 A.2d 28, 77 A.L.R.2d 908, expresses the principle succinctly in the following fashion:

"The question of capacity or incapacity is simply a factual

inquiry and is whether the particular child has the capacity to be contributorily negligent, i.e., act unreasonably under the circumstances, in light of the age, training, judgment, and other relevant factors which apply to the particular child. And the test to be applied is that applicable to any other question of fact. The trial judge is the first to view the matter and if he is of the opinion that the child, after a consideration of all of the relevant factors, does not have the capacity to be contributorily negligent and that reasonable men could not disagree, he then decides the question of capacity as a matter of law. But if the trial judge feels that reasonable men can disagree on the question of incapacity even though he himself would decide for or against incapacity, then he must allow the jury to decide the question of incapacity. * * *" In this connection also see Mann v. Fairbourn, 12 Utah 2d 342, 366 P.2d 603.

Applying this test to the instant case, can it be said that reasonable men could not disagree that this eight and one-half year old boy lacked the capacity to be contributorily negligent? We think not. There was little direct evidence of the capacity of this particular boy beyond his age and grade in school. The evidence did show that he could ride a bicycle and that he lived in the immediate neighborhood where the accident occurred. The danger involved in this case was from ordinary automobile traffic on a city street in the immediate neighborhood where he lived. We hold that under these circumstances reasonable men could differ as to the boy's capacity to be contributorily negligent.

What the trial judge did here in arriving at his conclusion that the deceased boy was incapable of contributory negligence as a matter of law was to go beyond the evidence as indicated above. He drew inferences as to the capacity of the deceased boy to be contributorily negligent from observation of his brother who testified as a witness at the trial and from testimony as to their similarities. Evidence introduced at the trial showed that the deceased boy was eight and one-half

years old at the time of the accident, that he and his brother (aged six and one-half at the time of the accident) were about the same size, that they looked alike and that they were quite often taken as twins by others. At the trial the judge questioned the brother (then approximately the same age as the deceased boy at the time of his death) as to the meaning and significance of a witnesses' oath and observed his demeanor, manner of testifying and ability to recollect and answer questions concerning the accident put to him by counsel. No direct testimony was introduced at the trial concerning the deceased boy's intelligence, experience or capacity to understand and avoid the hazard and danger involved in the case. On this basis the trial judge ruled that the deceased boy was incapable of contributory negligence as a matter of law. We hold that this was error for two reasons: (1) From the initial inference that *the witness* lacked the capacity to be contributorily negligent was drawn the second inference that *the deceased boy* likewise lacked the capacity to be contributorily negligent because of certain points of similarity with the witness; one inference cannot be based on another inference to prove a given fact. (Fisher v. Butte Electric Ry. Co., 72 Mont. 594, 235 P. 330; Monforton v. Northern Pacific Ry., 138 Mont. 191, 355 P.2d 501.) (2) Conflicting inferences can be drawn as to the deceased boy's knowledge and appreciation of the danger involved in the instant case.

We hold then, that under the facts and circumstances of this case the question of the capacity of the deceased boy to be contributorily negligent should not have been determined by the trial judge as a matter of law.

But was the action of the court in instructing the jury that the deceased boy was incapable of contributory negligence, and in refusing defendant's offered instruction on contributory negligence reversible error? We think not in the instant case. Error not affecting the substantial rights of the parties is harmless error; it is only error that affects the sub-

stantial rights of the parties that constitutes prejudicial error requiring reversal. (Rule 61, M.R.Civ.P., Montana Livestock & Loan Co. v. Stewart, 58 Mont. 221, 190 P. 985; Hill v. Chappel Bros., 97 Mont. 305, 33 P.2d 819.) The error involved here is not reversible error simply because there was no substantial evidence of contributory negligence in fact on the part of the deceased boy under the circumstances of the instant case; hence, the question of contributory negligence on the part of the deceased boy should not have been submitted to the jury irrespective of the question of capacity.

It is obvious that if the boy were riding his bicycle properly down the street in his own lane of travel and was struck from behind by the oncoming car of defendant, there is no basis for a finding of contributory negligence. Thus, it is necessary in the instant case for the defendant to show that such was not the case but on the contrary that the boy crossed the north sidewalk of B street, the adjacent curb, the west end lane of traffic, and into the eastbound lane of traffic immediately in front of defendant's automobile. All evidence that this latter situation occurred emanates directly from the mouth of defendant and is contradictory in itself.

Immediately following the accident a Mrs. Alley, who lived nearby and who heard the accident but did not see it, rushed out of her house and into the street. She testified that defendant then told her in substance that the boy was on the sidewalk on the Masonic Hall side of the street and "he ran across from the sidewalk right in front of my car." Defendant, who had testified only by deposition at the trial, had this to say:

"Q. Have you any idea from what direction the boy came? A. This direction (pointing, placing arrow on exhibit [attached to deposition]).

"Q. He was going on a slant across there? A. *If he had come directly in front of me I would have seen him.*

"Q. You do not remember? A. I saw something come in

front of my car toward this side of my car (pointing)." Emphasis supplied.

Defendant's own statements are self-contradictory. In her deposition she stated that she did not actually see the boy until he was underneath her car but just saw a "blur" momentarily before impact. She also stated in her deposition that she recalled seeing no boys near the Masonic Temple before the accident, and that she didn't believe there was a sidewalk on the Masonic Temple side of B Street. She also told the investigating highway patrolman who questioned her, the day following the accident that "she just didn't see the boy; didn't know what happened; didn't see him." The following testimony of the investigating highway patrolman emphasizes defendant's version of events:

"Q. She told you she never did see the boy beforehand, A. (Nodded head up and down.)

"Q. Is that correct? You just nodded your head? A. Yes.

"Q. Yes, and that she didn't see him until she saw him under the car? A. Yes."

Substantial credible evidence sufficient to warrant submission of the issue of contributory negligence to the jury is governed by the same rules that are used in determining the sufficiency of the evidence to support a verdict on that issue. Substantial credible evidence in that regard simply means such evidence as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the verdict on that issue; if all reasonable men must conclude that the evidence does not establish the verdict on that issue, then it is not substantial evidence. Morton v. Mooney, 97 Mont. 1, 33 P.2d 262; Adami v. Murphy, 118 Mont. 172, 164 P.2d 150; Sands v. Superior Buildings Co., 136 Mont. 531, 349 P.2d 314. A corollary of this rule is that whenever the surrounding circumstances make the story of a witness highly improbable or incredible, or whenever the testimony is inherently impossible, such evidence is not substantial and reversal should occur.

Casey v. Northern Pacific Ry. Co., 60 Mont. 56, 198 P. 141; Sullivan v. Northern Pacific Ry. Co., 109 Mont. 93, 94 P.2d 651.

The only evidence as to the path of travel of the boy on his bicycle to the place where the accident occurred is defendant's own testimony. Her testimony as to this path of travel is so inherently incredible as to be unworthy of belief in that she not only testified that she wasn't sure at first what she had hit but also she stated that the first time she saw the boy was underneath her car following the accident! Under such circumstances, how can she possibly know that the boy came across the sidewalk, curb, westbound lane of traffic and into the eastbound lane in front of her car where he was struck? Perhaps by speculation, conjecture, inference, or guess, none of which constitutes substantial credible evidence of the fact. See 32A C.J.S. Evidence § 1042. There is a total absence of any substantial credible evidence as to an improper or dangerous path of travel on which to predicate contributory negligence.

The next issue presented for review is the admission, over objection, of witness Lyons' opinion testimony as to the speed of defendant's automobile. Defendant argues that such testimony was inadmissible for two reasons: (1) the witness was not competent to express an opinion as to speed, and (2) the hypothetical question on speed assumed facts not in evidence.

In our view the witness was clearly competent and qualified to give expert opinion evidence as to the speed of defendant's automobile. He was an ex-highway patrolman of over twenty years experience in investigating automobile accidents, including the determination of speed of automobiles from skid marks and surrounding circumstances, and had been schooled in the use of graphs and charts used by the National Safety Council and the Montana Highway Patrol in connection with determining speed from skid marks. His training, experience and familiarity with accident investigations, engineering charts

relating to determination of speed from skid marks, and methods used to determine speed of moving automobiles from physical evidence were such as to qualify him as an "expert," i.e., a person skilled on a question of science (determination of speed from skid marks on a road surface). The opinion of a witness on a material question of science, art, or trade in which he is skilled is admissible in evidence. (Section 93-401-27, R.C.M.1947.) The determination of the qualification of a skilled or expert witness is a matter largely within the discretion of the trial judge, and in the absence of a showing of abuse, ordinarily will not be disturbed (Nesbitt v. City of Butte, 118 Mont. 84, 163 P.2d 251; Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979). The fact that the witness had retired from the highway patrol some six years previously, that he had first heard of the accident in question approximately two weeks before trial through plaintiff's counsel, that he didn't measure any drag factor or coefficient of friction on the particular road surface involved, and that as a highway patrolman he would not be permitted to testify in a case where his investigation was made a year and a half after the accident are facts affecting the weight rather than the admissibility of his testimony. They relate to the degree of his qualifications rather than absence of qualifications; this affects weight and not admissibility of evidence. (Nesbitt v. City of Butte, supra.)

Defendant cites O'Brien v. Great Northern Ry. Co., 145 Mont. 13, 400 P.2d 634, as rendering the testimony in the instant case incompetent. That case is not in point here. In the O'Brien case the witness was a highway patrolman who testified there was no way to determine speed from the skid marks on the highway and that he was not familiar with stopping distances in terms of speed. In the instant case the former highway patrolman's testimony is substantially the reverse.

Defendant further contends that the opinion testimony of witness Lyons as to the speed of defendant's automobile was elicited in response to a hypothetical question

which assumed facts, some of which were not then in evidence and some of which were never in evidence. While it is true that hypothetical questions must be based upon evidence before the court at the time such questions are asked (Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1; Carman v. Montana Cent. Ry. Co., 32 Mont. 137, 79 P. 690; State v. Riggs, 56 Mont. 393, 185 P. 165), subsequent proof of such assumed facts removes the original objectionability (Risken v. Northern Pac. Ry. Co., 137 Mont. 57, 350 P.2d 831). Defendant further argues that two facts assumed in the hypothetical question were never proven: (1) "the dirt and gravel road such as you find on B Street near the Masonic Temple," and (2) that a locked-wheel skid was involved. Suffice it to say that as to the first of these arguments, the assumed fact contended by defendant is a matter of semantics rather than substance. The phrase "such as you find" in the context of the question is merely a figure of speech equivalent to "such as one finds" or "such as is found." The witness' testimony as to his general familiarity with the character and surface of the roadway in question renders unnecessary a personal inspection immediately following the accident as a prerequisite to answering the hypothetical question. As to the second argument that there never was an evidence of a locked-wheel skid as assumed by the hypothetical question, it is true that no one directly testified to this. But there is testimony that the brakes on defendant's car were power brakes in very good condition; that in most vehicles with everything functioning properly, all four wheels lock at the same time and the skid marks start; and that there were measured skid marks of defendant's car for a fixed distance to the point of impact. This is sufficient basis for an inference that a locked-wheel skid occurred in the instant case and justifies the inclusion of a locked-wheel skid as an assumed fact in the hypothetical question.

The third issue presented for review is the failure of the trial court to instruct the jury on "unavoidable accident."

The propriety of such an instruction in a given case has given courts throughout the United States no end of difficulty, and the law as a whole in this country is in irreconcilable conflict. (See 65 A.L.R.2d 20.) Probably a majority of jurisdictions still hold that an unavoidable accident instruction is proper in certain types of motor vehicle cases but experience great difficulty in formulating a clear, workable and just rule for determining what constitutes a proper case for such an instruction. The distinct trend appears to be in the direction of extremely restricted use of this instruction if not outright disapproval.

The law of Montana on the use of an "unavoidable accident" instruction is set forth in five decisions of this Court, Tanner v. Smith (1934), 97 Mont. 229, 33 P.2d 547; Jewett v. Gleason (1937), 104 Mont. 63, 65 P.2d 3; Bogovich v. Scandrett (1945), 117 Mont. 341, 158 P.2d 637; Rodoni v. Hoskin (1960), 138 Mont. 164, 355 P.2d 296; Leach v. Great Northern Ry Co. (1961), 139 Mont. 84, 360 P.2d 94. The substance of Montana law on the use of an "unavoidable accident" instruction is that such an instruction may be proper in a limited class of cases if there is a sufficient evidentiary foundation to justify an inference that an unavoidable accident occurred (Rodoni v. Hoskin, supra) but that the necessary evidentiary foundation is lacking if there is evidence from which the jury could infer negligence on the part of defendant (Leach v. Great Northern Ry. Co., supra). This court has never approved the use of an "unavoidable accident" instruction in any case that has come before it, twice holding it reversible error to give it (Bogovich v. Scandrett, Leach v. Great Northern Ry. Co., supra) and three times upholding the trial court's refusal to so instruct the jury. (Tanner v. Smith, supra; Jewett v. Gleason, supra; Rodoni v. Hoskin, supra.)

Since this court last examined this question, several significant events have occurred that require a re-examination of the use of "unavoidable accident" instructions: (1) A series of decisions have been handed down by the highest courts of

other states flatly holding that an unavoidable accident instruction in any negligence case is error; (2) the Montana Rules of Civil Procedure, patterned after the Federal Rules, have been placed in operation; and (3) the Montana Jury Instruction Guide of recommended jury instructions has been formulated and published by a committee of trial judges in Montana and is in general use throughout the state.

Illustrative of a recent series of decisions by the highest courts of other states holding that the use of an unavoidable accident instruction in any case is error is Fenton v. Aleshire, (1964), 238 Or. 24, 393 P.2d 217, 222. In this case the Supreme Court of Oregon expressed its reasoning in the following manner:

"In the modern law of negligence the doctrine of 'unavoidable accident,' * * * is an anomaly. By definition—at least by the definition adopted by this court—it has no place as a separate and independent element in an action based on negligence. * * * 'the Restatement of Torts does not treat unavoidable accident as an entity of the law.' * * * No instruction on unavoidable accident is included in the Uniform Jury Instruction in negligence cases * * *. In practical effect, when included in the charge of the court to the jury, it is a lagniappe to the defendant—not only because it is an added 'you-should-find-for-the-defendant' type of instruction, but because it may be misunderstood by the jury as constituting some sort of separate defense."

This opinion then concludes: "We have re-examined the question and have reached the conclusion that the instruction on unavoidable accident should not be given in any case."

Another recent illustrative case to the same effect is Lewis v. Buckskin Joe's, Inc., (1964), 156 Colo. 46, 396 P.2d 933. Therein the Supreme Court of Colorado cited with approval the following excerpt from the decision of the Supreme Court of California in Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P. 2d 500, 65 A.L.R.2d 1:

"In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of the negligence or a contention that his negligence, if any, was not the proximate cause of the injury. * * * The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. Since the ordinary instruction on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose."

The Colorado Supreme Court concluded with these words:

"We conclude that from and after announcement of this opinion an instruction on unavoidable accident should never be given; * * * and that to now instruct on unavoidable accident is error. We expressly overrule previous pronouncements of this court to the contrary."

Additionally it is significant that the Montana Rules of Civil Procedure have been in effect since January 1, 1962, subsequent to the last pronouncement of this Court on unavoidable accident instructions. Under these Rules unavoidable accident is not a defense that must be pleaded affirmatively (Rule 8(c), M.R.Civ.P.) but would appear to be covered under a general denial of negligence (Rule 8(b), M.R.Civ.P.). Accordingly, it is apparent that these Rules do not contemplate consideration of unavoidable accident as a separate entity or defense apart from denial of negligence.

It is also significant that the Montana Jury Instruction Guide now in general use throughout the state does not contain an instruction on "unavoidable accident," but on the contrary recommends no proposed instruction. The committee therein states the matter in this fashion: "In view of the limited number of situations in which an instruction on unavoidable accident is proper, and the possibility of reversal [sic] error, it is recommended that the matter be left to the argument of counsel."

In addition to the foregoing reasons, it appears to us that the primary question before the jury in any negligence case is whether the defendant was negligent or not proximately causing the accident and this is the hurdle that plaintiff must surmount if he is to prevail. The giving of an instruction on "unavoidable accident" unnecessarily injects a "straw issue" in the case, diverts the attention of the jury from the primary issue of negligence, and necessarily creates the impression in the minds of the jurors of a second hurdle that plaintiff must overcome if he is to prevail. It is difficult to see how such an instruction adds anything but confusion in the minds of the jurors in understanding the principles of negligence. The particular vice of an unavoidable accident instruction in any case is that it tends to mislead the jury by creating a spurious additional issue in the case when in fact the sole issue is the presence or absence of negligence proximately causing the accident.

We have re-examined the law and have concluded it is time to part company with a principle originated over 100 years ago under a system of ancient pleading and practice recognizing unavoidable accident as a separate entity and defense in the law of negligence. Accordingly, from this time on we hold that the giving of an instruction on "unavoidable accident" in any negligence case is error. We specifically overrule any previous pronouncements of this court to the contrary. This ruling herein is prospective and not retrospective in appli-

cation as this change should properly affect only future cases. (See Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 7 P.2d 919; Sunburst Oil & Refining Co. v. Great Northern Ry. Co., 91 Mont. 216, 7 P.2d 927; State ex rel. Mueller v. Todd, 117 Mont. 80, 158 P.2d 299; Continental Supply Co. v. Abell, 95 Mont. 148, 24 P.2d 133; State v. Simanton, 100 Mont. 292, 49 P.2d 981; Hayward v. Richardson Const. Co., 136 Mont. 241, 347 P.2d 475, 77 A.L.R.2d 1144.)

Defendant further presents for review the refusal of the trial judge to give her offered instruction on defendant's emergency actions. Without extended discussion it is apparent that Court's Instruction No. 11 was an adequate instruction on the emergency doctrine as applied to the facts of this case, and failure to give defendant's offered instruction on the same subject is not error. The only substantial difference between the two instructions was that the Court's instruction covered only actual emergencies, while defendant's offered instruction also included apparent emergencies. As an actual emergency was involved in this case, failure to instruct on apparent emergency is immaterial.

Finally, defendant presents for review the refusal of the trial court to grant a directed verdict in favor of defendant both at the conclusion of plaintiff's case in chief and after all evidence was in. Defendant argues that there was no evidence on which a finding that defendant was negligent could be based. We disagree. Suffice it to say without extended discussion that there is sufficient evidence on which a jury could base a finding of negligence on the part of defendant in several particulars.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.