No. 87-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

JOSEPH EUGENE OLIVER,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Stephen C. Moses, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Joe Roberts, Asst. Atty. General, Helena, Montana
        Peter LaPanne, County Attorney, Roundup, Montana

---

Submitted on Briefs:  June 11, 1987

Decided:  September 11, 1987

Filed:  SEP 11 1987

_Ethel M. Harrison_

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Joseph Eugene Oliver appeals his conviction for burglary from the Fourteenth Judicial District, Musselshell County. Oliver was sentenced to eight years in the Montana State Prison with three years suspended.

We affirm.

Three issues are presented for our review:

1. Did the District Court abuse its discretion when it denied defendant's motion in limine to prohibit testimony of events which occurred in Helena?

2. Did the District Court abuse its discretion when it allowed Officer John Hitchcock to testify as an expert?

3. Was there substantial credible evidence to support the jury's verdict?

On August 20, 1986, defendant and appellant Joseph Eugene Oliver visited the residence of Robert Smith between 1:00 and 2:00 p.m. The Smith residence is located approximately five miles from Roundup in Musselshell County. Oliver was accompanied by his stepfather, Everett Handvold, and both were friends and acquaintances of Robert Smith and his wife, LaDonna.

Robert and LaDonna Smith were preparing to leave on a fishing trip, so the conversation took place in the driveway and on the front porch. The conversation ended in ten or fifteen minutes because Smith had loaded his car and was ready to leave on the fishing trip.

Smith testified at trial the defendant was driving a green colored older model Ford LTD with a black vinyl top. Smith also stated, "[Joseph Oliver] is the only friend I have that comes to visit me and wears tennis shoes."

Robert Smith owned several rifles which were displayed on a rack in his house. They were: a 1917 Winchester

2

Enfield; a 7-mm Mauser (WWI German infantry rifle); a 12-gauge Mossberg shotgun; a .22 semi-automatic Marlin; and a 22.250 Remmington Model 788.

Robert and LaDonna Smith testified that both doors to their residence were locked when they left to go fishing. They also testified that the doors were locked upon their return at approximately 10:00 p.m. At 11:30 p.m. the Smiths discovered that the rifles had been stolen. Since the doors were locked upon their return, it was apparent that someone had gained entry to the house by opening and climbing through a window.

John Hitchcock, deputy sheriff of Musselshell County, arrived at the crime scene at approximately 11:45 p.m. Robert Smith and Deputy Hitchcock inspected all possible entrances into the home. They found an open window in the rear of the residence with a tennis shoe tread print on the ground below. Deputy Hitchcock photographed the tennis shoe tread print. He later matched the photograph to tennis shoes worn by the defendant.

Sergeant Troy McGee of the Helena police department testified that he was contacted on August 21, 1986, by Chuck Lidman, manager of a Helena pawnshop called Alias Smith and Jones. Lidman reported that a man had been in the pawnshop trying to pawn some guns. Lidman described the man as nervous, fidgety and stated that the man refused to bring the guns into the store for inspection. The description of the guns given by the man matched the general description of the guns stolen from the Smith residence.

Lidman described the man in the pawnshop as being over six feet tall, weighing approximately 225 pounds with red hair, arm tatoos and wearing a Harley Davidson tee-shirt with "takes guts" on it. Lidman testified the man in the pawnshop, whom he later identified as defendant, was driving an

3

older model green Ford automobile with Illinois license plate number 505466. Pawnshop employee, Todd Stoos, also identified defendant as the man in Alias Smith & Jones Pawnshop on August 21, 1986. Stoos's testimony corroborated testimony of Chuck Lidman.

On September 5, 1986, defendant was arrested. After defendant was "booked" into jail, Deputy Hitchcock obtained one of the tennis shoes he was wearing at the time of his arrest. Officer Hitchcock performed a detailed comparison of defendant's tennis shoe and the photograph of the tread print found outside the bedroom window of the Smith residence. He concluded the tread pattern of the print and defendant's tennis shoe were "similar, if not identical."

George Eppers of the Montana Highway Patrol testified that on July 30, 1986, three weeks prior to the alleged burglary, he issued a speeding ticket to defendant Joe Oliver. Patrolman Eppers testified that defendant was driving an older model Ford, green in color, with a black vinyl top. Patrolman Eppers stated that defendant's license plate number was Illinois plate number 505606. However, cross-examination established that the actual number of defendant's license plate was Illinois license plate number 505466.

Defendant did not testify at trial and called one witness. Debbie Ritterodt, a dispatcher at the sheriff's office, testified that when Robert Smith reported the burglary, he stated the defendant had lived with him for the two or three weeks prior to the crime. Robert Smith denied making this statement. Smith stated that defendant had parked his trailer for three or four days at the Smith residence when defendant first moved to Roundup.

4

## Issue 1

Did the District Court abuse its discretion when it denied defendant's motion in limine to prohibit testimony of events which occurred in Helena?

Defendant Oliver contends that evidence of his activities in Helena following the alleged burglary of the Smith residence are not relevant to the elements of the crime as charged. Defendant argues the evidence must be excluded because it does not conclusively prove that he committed the burglary.

Relevancy is defined in Rule 401, M.R.Evid., which provides in pertinent part:

> Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In State v. Fitzpatrick (1980), 186 Mont. 187, 207, 606 P.2d 1343, 1354, we adopted the Criminal Code Commission comments:

> The test of relevance is whether an item of evidence will have value, as determined by logic and experience, in proving the proposition for which it is offered. The standard used to measure this acceptable probative value is "any tendency to make the existence of any fact . . . more or less probable than it would be without the evidence." This standard rejects more stringent ones which call for evidence to make the fact or proposition for which it is offered more probable than any other. It is meant to allow wide admissibility of circumstantial evidence limited only by Rule 403 or other special relevancy rules in Article IV.

5

Defendant does not raise Rule 403, M.R.Evid., or any other relevancy limitation.

At trial, the State introduced undisputed evidence the defendant had the opportunity to commit the offense. He was at the Smith residence on the afternoon the guns were stolen and was aware the Smiths were leaving their residence for a fishing trip. Secondly, the State presented evidence that entrance to the Smith residence was gained through a rear bedroom window. Underneath the window, a tennis shoe print was found which matched defendant's tennis shoe prints. Defendant was wearing tennis shoes on the day of the burglary and was the only person known to the Smiths who had done so in the area of their house.

The State then produced the evidence at issue: (1) that a person matching defendant's description and (2) driving an automobile which matched the description of defendant's automobile (3) attempted to sell guns of the same general description as those stolen from the Smiths to a Helena pawnshop. The above-mentioned testimony details motive, opportunity and evidence that defendant committed the crime as charged. The evidence in issue is circumstantial. Circumstantial evidence tends to establish a fact by proving another which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence, § 26-1-102, MCA. We have approved the use of circumstantial evidence in criminal convictions. See State v. Shurtliff (1981), 195 Mont. 213, 218, 635 P.2d 1294, 1297.

Evidence is relevant when it naturally or logically tends to establish a fact in issue. State v. Fitzpatrick, 186 Mont. at 207, 606 P.2d at 1354. The question of admissibility of evidence must be left to the sound discretion of the trial court, subject to review only in case of manifest

6

abuse. Cech v. State (1979), 183 Mont. 75, 89, 604 P.2d 97, 102.

The evidence of defendant's activities in Helena naturally or logically establishes an additional fact which implicates defendant's guilt of the crime as charged. The trial court properly admitted the evidence.

## Issue 2

Did the District Court abuse its discretion when it permitted Officer John Hitchcock to testify as an expert on footprints?

Rule 702, M.R.Evid., provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Previously, we recognized the need for expert testimony when identifying characteristics of shoe prints. See, State v. Smith (1986), 715 P.2d 1301, 1308, 43 St.Rep. 449, 457.

In the issue at hand, Officer John Hitchcock testified that on August 20, 1986, he photographed the tread print of a tennis shoe found below an open window located in the rear of the Smith residence. Officer Hitchcock testified that the photograph of the tread print found below the Smith's open window was "similar if not identical" to the tread print of defendant's tennis shoes. Hitchcock's photographs were admitted into evidence at trial.

After defendant objected to Officer Hitchcock's opinion testimony, the State laid a foundation to qualify Hitchcock as an expert witness. Hitchcock testified he was a seven-year veteran of the Musselshell County sheriff's

7

department; that he had received special training in footprints and latent prints and that he attended both the Montana Law Enforcement Academy's basic and intermediate training sessions. Officer Hitchcock also stated he had received training in identifying and securing footprints and in the observation of individual characteristics of footprints. Finally, Hitchcock testified that he had participated in several criminal investigations "where the only physical evidence that was left at a crime scene was footprints" and that the evidence had supported arrests and convictions.

We have long held the standard for determination of the qualification of an expert witness is "a matter largely within the discretion of the trial judge and in the absence of a showing of abuse, ordinarily will not be disturbed." Goodnough v. State (1982), 199 Mont. 9, 18, 647 P.2d 364, 369, citing Graham v. Richardson (1967), 150 Mont. 270, 285, 435 P.2d 263, 271. The degree of a witness qualification affects the weight rather than the admissibility of the testimony. State v. Berg (Mont. 1985), 697 P.2d 1365, 1367, 42 St.Rep. 518, 520.

The State offered a witness with specialized training in footprints and with practical experience to apply his education. The District Court found Officer Hitchcock qualified to testify as an expert witness. We hold that the court did not abuse its discretion when it found Hitchcock qualified to testify as an expert.

Issue 3

Was there substantial credible evidence to support the jury's verdict?

Defendant argues his conviction is not supported by substantial evidence because the State did not prove beyond a

reasonable doubt that defendant knowingly entered an occupied structure with the purpose to commit an offense therein. Section 46-6-204(1), MCA. Defendant contends the State's presentation of circumstantial evidence merely shows that defendant had the opportunity to commit the burglary but fails to connect defendant to the crime.

The standard for review of the sufficiency of the evidence is: "Whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U. S. 307, 319, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 573. We defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910, 41 St.Rep. 1277, 1289,

After reviewing the record, we hold that substantial credible evidence was presented to the jury. A summary of the evidence establishes that defendant was aware that Robert and LaDonna Smith would be away from their home on the afternoon of August 20, 1986. Earlier, defendant had expressed interest in a number of Robert Smith's rifles. Defendant had also indicated to Smith that he wanted to move from the Roundup area and needed money to do so.

When the Smiths left to go fishing, the doors to their residence were locked. The doors were still locked when they returned. However, a window was ajar and a tennis shoe tread print was found below the opened window. The tread print matched that of defendant's tennis shoe.

On the morning following the burglary, the manager of a Helena pawnshop, Chuck Lidman, and an employee, Todd Stoos, witnessed the defendant trying to sell guns which matched the general description of those stolen from the Smith residence.

9

Stoos and Lidman identified defendant out of a photo lineup. They described defendant as nervous and fidgety and testified that defendant refused to bring the guns into the shop for inspection. Lidman described defendant's automobile as a green colored older model Ford with a black vinyl top and Illinois license plate number 505466.

Finally, the State presented evidence that defendant had been issued a speeding citation three weeks prior to the burglary. Montana Highway Patrolman George Eppers testified that defendant was driving a green colored, older model Ford Galaxy with a black vinyl top and Illinois license plate number 505606. Although Patrolman Eppers incorrectly recorded defendant's license plate number, it is apparent the jury determined that both Chuck Lidman and Patrolman Eppers observed the same automobile.

In conclusion, the evidence was primarily circumstantial, there being no witnesses to the actual burglary. However, when the evidence is viewed in a light most favorable to the State, it is clear that substantial credible evidence supports defendant's conviction for burglary. State v. Atlas (Mont. 1986), 728 P.2d 421, 423, 43 St.Rep. 2042, 2044.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices