No. 90-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF

SANDRA L. ARROTTA,

     Petitioner and Respondent,

  and

LARRY P. ARROTTA,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Randy K. Dix; Dix & Hunt Law Firm; Helena, Montana

     For Respondent:

        Marcia Birkenbuel, Great Falls, Montana

Submitted on Briefs:  August 23, 1990

Decided:  September 18, 1990

Filed:

_____
            Clerk

FILED
'90 SEP 18 AM 11 03
ED SMITH, CLERK
MONTANA SUPREME COURT

Justice Fred J. Weber delivered the Opinion of the Court.

In a dissolution proceeding, the District Court for the Eighth Judicial District, Cascade County, awarded primary custody of the parties' daughter to the wife and distributed the marital property. The husband appeals the District Court's valuation of his insurance business and the award of primary custody of their daughter to the wife. We affirm.

The issues for our consideration are:

1. Did the District Court properly admit the expert testimony of Nicholas Bourdeau as to the value of Larry Arrotta's insurance business?

2. Did the District Court properly exercise its discretion to achieve an equitable distribution of the marital estate?

3. Did the District Court abuse its discretion by awarding primary custody of the parties' daughter to the mother in light of the child's expressed preference to live with her father?

Larry and Sandra Arrotta were married in Great Falls in 1969. One child, Nikole, was born of the marriage.

At the time of their marriage Sandra had completed a year of business college and was employed by a bank. Sandra continued working and has advanced with her employer to the position of office manager. The District Court found that Sandra had no accrued pension benefits.

Larry completed his education degree at Eastern Montana College while Sandra worked. Upon graduation, Larry became employed with Farmer's Union Insurance where he continued to work

until he started his own insurance agency. Larry has remained with his insurance agency which operates as a partnership.

The District Court found that at the time of the marriage, neither party owned any real property and owned little personal property.

The parties separated in September of 1988. Larry left the family home and moved into a rented home in Great Falls. Sandra and Nikole remained in the family home. In May of 1989, Nikole moved in with her father, where she was still living at the time of the hearing. Nikole told her attorney and the District Court that she preferred to live with her father.

Sandra hired a Certified Public Accountant (CPA), Nick Bourdeau, to determine the value of Larry's insurance business and testify to his findings. Prior to the hearing, Larry filed a motion in limine with the District Court requesting the exclusion of any work done or testimony by Nick Bourdeau as to the value of Larry's insurance business. The District Court denied the motion. From that decison and the decision to award primary custody of Nikole to Sandra, Larry appeals.

I

Did the District Court properly admit the expert testimony of Mr. Bourdeau as to the value of Larry Arrotta's insurance business?

Larry contends that Mr. Bourdeau was not qualified to testify as an expert because he has no knowledge of the insurance industry and because he had not previously valued a small, independent insurance business. He urges that the goodwill of the business was

grossly over-valued.

Sandra maintains that Mr. Bourdeau was well qualified to testify. She points out that not only is he a CPA, but that he has worked in private accounting; in financial investigations; in forensic or litigation accounting; that he has attended several litigation accounting courses; and that his status as a CPA requires him to complete 40 hours of continuing professional education per year.

The District Court noted that although Larry disputed Mr. Bourdeau's valuation of his business, he failed to introduce any evidence of his own as to value. It also noted that "the expert opinion was approximately the same as the valuation method set out in the partnership agreement's provision for valuation of a partner's share upon retirement or withdrawal."

We defined the concept of goodwill in In re Marriage of Hull (1986), 219 Mont. 480, 712 P.2d 1317. We stated:

> Goodwill is property of an intangible nature and is commonly defined as the expectation of continued patronage. Amony the elements which engender goodwill are continuity of name, location, reputation for honest and fair dealing, and individual talent and ability. . . . The determination of its value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success. . . . In view of exigencies that are ordinarily attendant upon a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill.

Goodwill is not applicable only to professional practices. It may also exist in a business founded on personal skill or reputation. See Baldwin v. Stuber (1979), 182 Mont. 501, 597 P.2d 1135.

4

The determination of the qualification of an expert witness is a matter of discretion for the trial court. Absent a showing of abuse of that discretion, the decision will not be disturbed. See State v. Oliver (1987), 228 Mont. 322, 742 P.2d 999; Graham v. Richardson (1967), 150 Mont. 270, 435 P.2d 263. We conclude that the District Court did not abuse its discretion when it found Mr. Bourdeau qualified to testify as an expert witness on the value of goodwill. We hold that the District Court properly admitted the expert testimony of Mr. Bourdeau as to the value of Larry Arrotta's insurance business.

## II

Did the District Court properly exercise its discretion to achieve an equitable distribution of the marital estate?

Larry contends that the distribution of the marital estate was inequitable. He bases this contention largely on the value assigned to his insurance business by Mr. Bourdeau and the District Court. He urges that the over-valuation of the business resulted in an inequitable distribution of marital property. Sandra argues that the division was equitable and that the District Court properly apportioned the property pursuant to §40-4-202, MCA.

The District Court is vested with broad discretion in distributing property in dissolution proceedings. When the District Court's judgment was based upon substantial credible evidence, it will not be altered unless a clear abuse of discretion is shown. In re Marriage of Cannon (Mont. 1990), 790 P.2d 479, 47 St.Rep. 752. The District Court's clear and complete findings of

5

fact reflect that it carefully considered the factors set out in §40-4-202, MCA. Furthermore, in light of our holding under Issue I that Mr. Bourdeau's testimony was proper and uncontradicted, Larry's argument that the value was erroneous and caused an inequitable distribution of property is without merit. We hold that the District Court properly exercised its discretion to achieve an equitable distribution of the marital estate.

### III

Did the District Court abuse its discretion by awarding primary custody of the parties' daughter to the mother in light of the child's expressed preference to live with her father?

The District Court made the following pertinent findings of fact regarding custody of Nikole:

> 8. [Sandra] and the parties' daughter, Nikole Arrotta, remained in the family home when [Larry] left. Nikole stayed with her mother until May 16, 1989, at which time the parties agreed she would spend some time with her father. Nikole has lived with her father, [Larry], from that time to the present. In her interview with the Court and her attorney she indicated a desire to live with her father.

> 9. The parties dispute who should have primary custody of the child. However, the Court finds that [Sandra] has been the primary caretaker for the child and has a more stable structured and supervised home environment for Nikole than does [Larry]. It is therefore in the best interest of the child that [Sandra] have primary custody of Nikole with [Larry] having the right to physical custody of her on alternating weekends, alternating holidays, and for a continuous period of six weeks during the summer, commencind July 5, 1990. [Larry's] alternating weekend periods of custody shall commence the first weekend after the date of the Judgment based on these Findings and Conclusions. [Sandra] has agreed that if the Court finds that the child desires a joint custody arrangement, which allows her to spend equal time with each parent, [Sandra] would agree to such a plan. It is apparent, however, that at this time a

6

fixed schedule of custody and visitation is needed and is in <u>Nikole's best interest</u>. (emphasis added).

Larry argues that Finding 9 is erroneous becaues it fails to consider the factors for determining the best interests of the child set forth in §40-4-212, MCA. He further urges that the District Court erred by ignoring Nikole's express desire to live with her father absent evidence that he is anything other than a good parent.

The District Court need not make specific findings on each statutory element. Rather, it must demonstrate only that it has considered each element by making specific findings as to the best interests of the child. In re Marriage of Keating (1984), 212 Mont. 462, 689 P.2d 249.

The District Court made the appropriate findings and considered the best interests of Nikole. The judge interviewed Nikole in chambers. The transcript reveals that Nikole testified that she would go to the same school no matter which parent she lived with. She testified as to her relationship with her parents, her adjustments in her home life and her school life. Thus, it is clear from the record that the District Court considered the factors of §40-4-212, MCA, before making its determination as to Nikole's best interests.

Larry's argument that the lower court is bound by the child's wishes absent a finding of his unfitness is not persuasive. The District Court is not required to award custody based on a child's preference. The fitness of either party as a parent is only one factor to be considered by the court in granting custody. Bier v.

Sherrard (1981), 623 P.2d 550, 38 St.Rep. 158. We hold that the District Court did not abuse its discretion by awarding primary custody of the parties' daughter to the mother in light of the child's expressed preference to live with her father.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8