JUSTICE HARRISON
delivered the Opinion of the Court.
Jan (Ulland) Gregson appeals the order of the First Judicial District Court, Lewis and Clark County, Montana, which modifies the custody provision of a dissolution decree awarding the parties joint custody of their daughter with physical custody retained by the mother. While retaining the designation of joint custody, the District Court’s modification transferred physical custody of the child from the mother, Jan, to the father, Marcus. We affirm.
The parties present the following issues:
1. Did the District Court err in modifying the primary physical custody of the minor child, Rian?
2. Did the District Court err in failing to follow the child’s wishes concerning physical custody and primary residence?
3. Did the District Court err in failing to appoint independent counsel to represent the child’s interests?
*163 To appreciate the circumstances of this appeal, an overview of the litigation involving this marriage dissolution is appropriate at this point. Marcus and Jan Ulland were married on May 21, 1977. They had one child, Rian Marie, born May 8, 1978. The couple separated in September of 1979; the First Judicial District Court entered a decree of dissolution on May 14, 1980. By stipulation of the parties adopted in full by the court, the decree awarded the parties joint custody of Rian naming Jan as the physical custodian and awarding Marcus reasonable visitation. Further, the parties stipulated that if either parent decided to permanently leave Montana, the leaving party would give the other party fifteen days prior written notice. In the event Jan wished to move from Montana with Rian, the parties agreed to set up reasonable visitation to allow Marcus an opportunity to participate in Rian’s upbringing.
On May 14, 1980, the day the District Court entered the decree, Jan gave Marcus the requisite fifteen days written notice that she and Rian were leaving Montana. Approximately three weeks later, Jan and Rian left Montana and Jan remarried.
Upon receiving Jan’s notice, Marcus petitioned the court to modify the visitation provisions in the original decree. The District Court concluded that Jan’s intention to move from Montana was a change in circumstances justifying alteration of the original decree. Accordingly, the court set forth a specific visitation schedule including unlimited reasonable visitation whenever Marcus was in the geographic area of the child.
On August 23,1985, Marcus petitioned the court a second time to modify visitation claiming a change in circumstances. Marcus based this petition on Jan’s constant moving with Rian to different locations without keeping Marcus apprised of his daughter’s whereabouts and phone number, thus making it difficult for him to keep in contact with Rian. When Marcus received no response to his August 23, 1985, petition, he filed a third petition to modify his visitation.
The parties entered into a stipulation, filed with the court November 6,1985, resolving Marcus’ outstanding motions. They agreed that a change in circumstances supported a change in visitation. The stipulation provided a specific visitation schedule and that the minor child would be known by her legal name (Ulland) and she would be enrolled in school under her legal name. The District Court gave this stipulation full force and effect.
On February 17, 1989, Marcus filed his fourth motion to modify the custody provisions. Marcus asked the court to change primary *164 physical custody from Jan to him. Alternatively, Marcus asked the court to order physical custody to alternate yearly between Marcus and Jan or to set specific dates for visitation. Marcus based this motion on his claim of Jan’s continual interference with his visitation rights.
The District Court held a hearing on May 18, 1989, concerning Marcus’ February 17, 1989, motion to modify custody. Both parties were represented by counsel. The court verbally admonished Jan for her past interference with Marcus’ visitation. The court rejected a change in primary physical custody at that time and awarded Jan another opportunity to comply with court orders and prior stipulations while retaining primary physical custody of Rian. The court ordered Jan to refrain from interfering and to encourage Rian to develop a relationship with Marcus. As a result of this hearing, the court entered an interim order setting forth specific dates that Rian would visit Marcus, including four weeks during the summer in 1989 and the 1989 Christmas holiday. The court awarded Marcus physical custody of Rian for Christmas break and spring break on an alternating yearly basis beginning with Christmas of 1989. Additionally, the court awarded Marcus physical custody of Rian for six weeks during the summers, beginning with the summer of 1990. The court stressed the importance of Jan’s compliance with this order. The court warned her that if she failed to comply it would hold her in contempt and punish her to emphasize the severity of her continual non-compliance.
Pursuant to the court’s interim order, Rian spent four weeks in the summer of 1989 with Marcus and his new wife. During this visitation, Jan frequently contacted Rian via telephone calls and letters. Jan and her husband refused to address letters to Rian by her legal name, violating the court order and the parties’ November 6,1985, stipulation which provided that Rian would be known by her legal name.
Following the May 1989 hearing, the parties entered into another stipulation attempting to resolve the parties’ difficulties and vitiating the need for the court to issue a final order. This stipulation, adopting the court’s requirements concerning visitation periods, was signed by the parties on December 5,1989, and filed with the court on December 12,1989. Additionally, the stipulation required that Marcus give Jan thirty days notice when he intended to exercise his visitation rights.
Prior to filing this stipulation, Marcus notified Jan that he intended to exercise his visitation rights for Rian’s Christmas break. Jan refused to allow Marcus to exercise his Christmas visitation *165 rights, as provided by the court and the December 12, 1989 stipulation, because he failed to give her thirty days notice. Since the court awarded Marcus visitation for Christmas of 1989, but not 1990, and Jan refused visitation in 1989, Marcus tried to arrange his visitation to allow Rian to remain with Jan for Christmas of 1989, but spend Christmas of 1990 with Marcus in Washington. This agreement was reduced to writing but unexecuted by Jan. It was not until January 31, 1990, that Jan’s attorney notified Marcus’ attorney that Jan refused to trade Christmas of 1989 for Christmas of 1990. Needless to say, Marcus lost his court ordered Christmas of 1989 visitation.
Pursuant to the December 12, 1989, stipulation, Marcus notified Jan of his intent to exercise his visitation rights for spring break of 1990. He sent advance purchased airline tickets to fly Rian from Helena to Washington. Jan refused to allow Rian to fly alone. Consequently, Marcus and Jan each drove to Spokane to exchange Rian, thus reducing Rian’s visit with Marcus by two of seven days.
In May of 1990, Marcus notified Jan of his intent to exercise his six week summer visitation. Jan notified Marcus that she was filing a petition to modify visitation because Rian did not want to spend the summer with Marcus. A hearing was scheduled in May but was vacated until August. After the hearing was delayed, Jan withdrew Rian from school one week early and moved to California for the summer without notifying Marcus of the change of address, violating the parties’ December 12, 1989, stipulation.
Marcus responded to Jan’s petition by requesting a change in physical custody. After hearings conducted on both motions on August 14,1990, and September 20,1990, the District Court granted Marcus’ motion, immediately transferring physical custody of Rian from Jan to Marcus. The District Court denied Jan’s motion to reconsider. Jan appeals.
As noted from the record and as set forth above, this case has a long and unsettling history. From the day the court entered the final decree of dissolution, Marcus has had to continually fight for contact with Rian. The record is replete with numerous instances when Marcus attempted to exercise his visitation rights only to be thwarted by Jan’s actions.
While Jan retained physical custody of Rian, Marcus traveled to and from Jan’s home to visit Rian. On numerous occasions, Marcus notified Jan that he would be in the area to visit Rian. Jan would not object to visitation. When he arrived, he was either greeted with resistance or he was not greeted at all. Initially, either Jan and Rian *166 would not be home or Jan would resist visitation. Ultimately, when Marcus located Rian, Jan interfered with visitation by not allowing it or restricting it.
As noted above, in addition to having reasonable visitation when Marcus was in the geographic area, the court awarded Marcus visitation for extended periods of time during certain holidays and the summer. To obtain physical custody of Rian for these extended visits required extensive travel. Since Jan refused to allow Rian to fly alone, alternate transportation had to be arranged.
The parties have been before the district court on at least five separate occasions regarding visitation and physical custody of Rian. Each time, Marcus maintained that Jan interfered in his visitation with Rian thereby precluding development of a meaningful father/daughter relationship. Marcus acknowledges that Rian was unwilling to spend time with him, attributing Rian’s reluctance to Jan’s constant interference. Each time the parties were before the court, the court attempted to structure visitation to facilitate a relationship between Marcus and Rian.
I.
Did the District Court err in modifying the primary physical custody of the minor child, Rian?
Marcus and Jan originally stipulated to and were awarded joint custody of Rian. Joint custody is presumed to be in the best interest of the child, 40-4-224(1), MCA, and is awarded to assure frequent and continual contact of the minor child with both parents. In re Marriage of Bergner (1986), 222 Mont. 305, 307, 722 P.2d 1141, 1143. Physical custody should be arranged as equally as practical between the parents to comply with the express purpose of an award of joint custody, with the child’s best interest as the primary consideration. Section 40-4-224(2), MCA.
Modification of physical custody within a joint custody arrangement is proper when the change is in the best interest of the child. In re Marriage of Mitchell (Mont. 1991), [248 Mont. 105,] 809 P.2d 582, 584, 48 St.Rep. 353, 354; citing In re Marriage of Keil (1990), 246 Mont. 344, 347, 805 P.2d 1334, 1336. Arequest to change the physical custodian of the child requires an application of 40-4-224(2), MCA, which states in part:
“ ‘[J]oint custody5 means an order awarding custody of the minor child to both parents and providing that the physical custody and *167 residency of the child shall be allotted between the parents in such a way as to assure the child frequent and continuing contact with both parents. The allotment of time between the parents must be as equal as possible; however,
“(a)each case shall be determined according to its own practicalities, with the best interest of the child as the primary consideration; ...”
The District Court must consider the factors set forth in 40-4-212, MCA, when determining whether the modification of physical custody is in the child’s best interest. In re Marriage of Stephenson988), 230 Mont. 439, 445, 750 P.2d 1073, 1077. The courtis under no obligation to consider the more stringent factors set forth in 40-4-219, MCA, when faced with an action for modification of physical custody rather than an action for termination of joint custody. Marriage of Keil, 246 Mont. at 347, 805 P.2d at 1336.
In determining the child’s best interest, the district court must consider the following relevant factors:
“(a) the wishes of the child’s parent or parents as to his custody;
“(b) the wishes of the child as to his custodian;
“(c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child’s best interest;
“(d) the child’s adjustment to his home, school, and community;
“(e) the mental and physical health of all individuals involved;
“(f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and
“(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.”
Section 40-4-212, MCA.
Jan contends that the District Court erred because it failed to make specific findings concerning all of the best interest factors listed in 40-4-212, MCA. We disagree. All that the statute requires is that the court consider the factors listed. The court is not required to make specific findings concerning each element of 40-4-212, MCA, but must “express the ‘essential and determining’ facts upon which its conclusions rest." Marriage of Mitchell, 809 P.2d at 584-85, 48 St.Rep. at 354; citing Cameron v. Cameron (1982), 197 Mont. 226, 230-31, 641 P.2d 1057, 1060.
Examination of the record before us reveals that the District Court considered the relevant factors. First, it is undisputed that the court was well aware that both parents desired physical custody of *168 Rian. Second, after interviewing Rian in chambers to determine her wishes concerning physical custody, the court ascertained and entered findings pertaining to Rian’s unwillingness to spend time with Marcus. Third, the court made specific findings concerning the interaction and interrelationship between Rian and the Gregsons and Rian and the Ullands. In its Findings of Fact, Conclusions of Law and Order, the court noted:
“31. Jan, Glenn Gregson, and Rian have a close, loving family relationship ....
“32. Marcus and his wife, Dawn Ulland, have a loving relationship with Rian, and they get along well together.”
Fourth, the court considered Rian’s adjustment to her new home with Marcus finding that Rian would show resistance to the change but concluded that Rian’s best interests would be fostered if Rian and Marcus obtained professional counseling to help Rian adjust.
Neither party presented evidence and the District Court did not make any findings concerning the last three factors listed in 40-4-212, MCA. As such, these factors are not relevant and the District Court did not err in failing to consider them.
 This Court will not overturn the district court’s findings unless they are clearly erroneous. Rule 52(a), M.R.Civ.R In custody modification cases, it is particularly important for this Court to defer to the district court which personally evaluated the testimony. In re Marriage of Anderson (1989), 240 Mont. 316, 320, 783 P.2d 1372, 1374-1375. The testimony presented by the parties is diametrically opposed. However, resolving conflicts in testimony is the trier of fact’s function. Marriage of Mitchell, [248 Mont. 105,] 809 P.2d at 584, 48 St.Rep. at 354. The District Court listened to the testimony, reviewed the exhibits, and was persuaded by the evidence presented on behalf of Marcus. We will not substitute our judgment for that of the district court unless the appellant shows an abuse of the district court’s discretion. Marriage of Mitchell, [248 Mont. 105,] 809 P.2d at 584, 48 St.Rep. at 354.
The District Court’s findings reveal that the court based its decision on Rian’s best interest. The findings support the court’s consideration of Rian’s best interest concluding that it was in Rian’s best interest to change physical custody to enable Rian and Marcus to form a meaningful relationship. Accordingly, we hold that the District Court did not err in modifying custody by transferring physical custody of Rian from Jan to Marcus.
*169 II.
Did the District Court err in failing to follow the child’s wishes as to her physical custody and primary residence?
As previously stated, the court was statutorily mandated to consider Rian’s wishes when determining her best interest. Section 40-4-212, MCA. However, the court’s decision after considering the child’s wishes is within the court’s discretion.
Considering the court’s conversation with Rian, it is clear that the court did not err in failing to follow her wishes. The trial judge is singularly equipped to assess a young child’s ability to formulate and articulate her custody wishes and weigh that preference in light of the other evidence and factors enumerated in 40-4-212, MCA. In re Marriage of Merriman (Mont. 1991), [247 Mont. 491,] 807 P.2d 1351, 1354, 48 St.Rep. 275, 276. A child’s expressed wishes are not determinative of best interest. Marriage of Merriman, 807 P.2d at 1354, 48 St.Rep. at 276.
The District Court and all parties agree that Rian would rather live with Jan; Rian clearly expressed to the court her strong desire not to live with Marcus. In Spite of Rian’s wishes to remain with Jan, the District Court concluded that Rian’s best interests required the opportunity to have meaningful relationships with both Jan and Marcus. Rian has been given the opportunity to develop such a relationship with Jan. She has been deprived of the opportunity to develop such a relationship with Marcus due to Jan’s continued interference and Jan’s fostering and nurturing of the father/daughter relationship between Rian and her step-father, which has frustrated any chance for a relationship between Rian and Marcus. Due to Rian’s age, the court found that this would be the last opportunity for Rian and Marcus to develop a strong and lasting father/daughter relationship. Further, if Rian remained with Jan, her contact with Marcus would only diminish and a healthy father/daughter relationship would never develop.
A review of the record reveals that the District Court considered Rian’s wishes along with the other best interest factors of 40-4-212, MCA, and weighed them accordingly. We hold that the District Court did not err in modifying physical custody of Rian despite Rian’s expressed preference to remain with Jan.
*170 III.
Did the District Court err in failing to appoint independent counsel to represent Rian’s interests?
Section 40-4-205, MCA, states “[t]he court may appoint an attorney to represent the interests of a minor dependent child with respect to his support, custody, and visitation ... .” (Emphasis added.) Neither party moved the District Court for independent counsel to represent Rian’s interests at the August 14, 1990, or the September 20, 1990, hearings. This Court will not consider an issue for the first time on appeal which the parties failed to raise at the district court. Marriage of Merriman, 807 P.2d at 1354, 48 St.Rep. at 276.
Based on the foregoing discussion, we affirm the decision of the District Court.
JUSTICES HUNT, GRAY, McDONOUGH and WEBER concur.