No. 92-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

CANDIS K. FESOLOWITZ
n/k/a CANDIS DECHAINE,

      Petitioner and Appellant,

  and

VICTOR M. FESOLOWITZ,

      Respondent and Respondent.

FILED

MAY 18 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Rienne H. McElyea; Berg, Lilly, Andriolo
& Tollefsen, Bozeman, Montana

      For Respondent:

          Edmund P. Sedivy, Jr.; Morrow, Sedivy
& Bennett, Bozeman, Montana

Submitted on Briefs:  April 16, 1993

Decided:  May 18, 1993

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Candis DeChaine, formerly Candis Fesolowitz (Candy), appeals from an order modifying child custody, visitation, and support entered by the Eighteenth Judicial District Court, Gallatin County, the Honorable Larry W. Moran presiding. We affirm.

Candy and her former husband, Victor Fesolowitz (Victor) were married in 1976 in Sioux City, Iowa. They had two children, both girls, born on July 8, 1979, and October 1, 1984. Candy petitioned for dissolution of the marriage in February 1986. She was then, and still is, a flight attendant for Northwest Airlines, living in Bozeman, Montana but flying out of Minneapolis, Minnesota. Victor was and still is a pilot for Northwest Airlines, living in Bozeman and Big Sky, Montana, but flying out of Detroit, Michigan.

The August 1988 Order

A decree of dissolution was entered by Judge Gary on October 30, 1987, "reserving until later all other issues which have to be considered in this matter." The findings of fact, conclusions of law and order that accompanied the decree followed a five-day hearing which in turn concluded eighteen months of litigation over property, child support, child custody and visitation. Conflict over these issues continued until Judge Gary issued a second order on August 9, 1988, granting the parties joint custody with primary physical custody to Candy for ten months of each year, and to Victor for July and August of each year, until the younger child reached the age of seven. Visitation was ordered as follows:

> [D]uring these nine months of the school year, Victor is granted visitation of no less than ten days during each

2

month. The ten days shall be agreed upon between the parties by the 25th of the preceding month and adjusted to both parties' schedules. If the parties cannot peaceably agree upon a schedule, the aggrieved party may seek an absolute order dictating times by the court, and the party causing a return to court shall be responsible for both attorney fees incurred. . . .

[D]uring the two months that Victor is the primary custodian the reverse procedures for Candy shall apply. . . .

[W]hile Candy is remarried and has a number of relatives in the western United States, Victor has no relatives in the United States except these two children, and the court deems it important . . . that Victor has as much visitation and custody as possible. Victor shall have the right to have custody of the children any day the children are in town and Candy is out of town, and will not count against Victor's ten days.

Judge Gary's August 1988 order also divided the parties' extensive real estate holdings, investments, and personal property and required Victor to pay Candy $800 a month as child support during the months when the children lived with her, and $400 a month in July and August, retroactive to January 15, 1988. Child support was to increase at a rate equivalent to the annual increase in Victor's salary.

Candy moved to amend the order, pointing out that no provision had been made for custody after the younger child reached the age of seven. Victor responded, asserting that "it is apparent from the Court's order" that the parties would have "equal time with the two children," after the younger child reached the age of seven. Neither party contested the court's finding that Victor's annual salary was $98,000 and Candy's, $22,000, or its finding that the cost of caring for the two children was $1,000 per month.

In September 1988, the parties signed a "settlement agreement"

3

amending the court's division of the marital estate. This agreement did not address child support, child custody, or visitation. On October 4, 1988, Judge Gary entered an amended order incorporating the settlement agreement.

The August 1992 Order

Judge Gary's August 1988 order, as amended in October 1988, did not explicitly provide for custody and visitation after the younger child's seventh birthday. In June 1991, four months before that birthday, Candy filed a motion to review custody and child support. Victor filed a cross-motion requesting that child support be reviewed under the Child Support Guidelines that had been implemented after Judge Gary's last order. A hearing was held before Judge Moran on January 31, 1992. By then, Victor was paying $1,054 a month as child support for the ten months each year that Candy had physical custody of the children.

After testimony on the parties' experience with the physical custody and visitation arrangements ordered by Judge Gary in August 1988, the court recessed while Candy and Victor met with their lawyers. On returning three hours later, Victor's lawyer told the court that the parties had "come to an agreement with the exception of two points" on the subject of custody and visitation, and that the parties had agreed to submit their agreement to the court in writing, with position papers on the two unresolved issues. Child support issues were to be resolved through further negotiation or at a later hearing.

In March 1992, Candy asked the court to make the position papers confidential. In her motion she said that she and Victor

4

had not been able to agree on "several primary issues." She asked that the position papers be confidential so that Victor would not keep challenging her position in "numerous and lengthy counter-position papers." The court granted this motion, and both parties filed confidential position papers in May 1992.

Victor filed an objection three days later, saying that Candy had refused to sign a stipulation based on their agreement at the January 31 hearing. A letter from Candy's lawyer was attached, listing seven "contested" issues. Chief among these were the months during which each party controlled the scheduling of visitation for the following month; the number of visitation days for Victor (ten or eleven, during the ten months Candy had physical custody); and the number of months during the school year during which Victor would have visitation for two weekends rather than one. The parties did not contest Candy's ten months of physical custody or her control of scheduling for seven months of the year.

Judge Moran held a two-day hearing on child support modification in late May, and on August 14, 1992, he entered judgment awarding child support to Candy at $588.97 a month and specifying the following physical custody and visitation arrangements:

> Father shall have the children two complete weekends each month of the year, a weekend being defined as Saturday and Sunday.
>
> Father shall have the children a minimum of 12 days per month, except July and August when Mother shall have the children a minimum of twelve days per month.
>
> Father shall be the primary custodial parent six months of the year, being January, February, March, July, August, and September.

5

During the six months that Father is the custodial parent, he will notify Mother by the 14th of each month regarding which days he will have the children for the following month. It will be his obligation to get those days off and it will be Mother's obligation to bid her job responsibilities around Father's days with the children.

. . .

Parallel provisions followed, covering the six months that Mother is the custodial parent.

As for child support, the court found that the parties had combined net annual resources of $96,985, of which Victor's share was 72.85 per cent, and that under the child support guidelines for two children ages seven and twelve, an "appropriate percentage" for child support was 23.6 per cent, or $22,664. Victor's share was $16,511 annually, or $1,375.92 per month. The order reduced Victor's share to $588.97 per month based on the court's expectation that the children would live with him 150 days, or approximately five months, each year.

Candy appealed from this judgment, raising the following issues:

1. Whether the District Court erred in modifying a stipulation without notifying the parties;

2. Whether the District Court failed to provide for the best interests of the children in its custody decree; and

3. Whether the District Court erred in modifying child support.

I

Did the District Court err in modifying a stipulation without notifying the parties?

In her motion for a new trial, filed in September 1992, Candy

6

stated that she and Victor had agreed, in an oral stipulation at the January 31, 1992 hearing, that she would have physical custody for ten months; that Victor's visitation would include one weekend per month; and that she would schedule the visitation for seven months each year. Victor's lawyer told the court:

> We've agreed that we would submit in writing to the court the agreed portion of our stipulation, and that we will submit . . . position papers on the two additional points yet to be resolved. Based upon receipt of the position papers from both parties and review of the agreed stipulation, the court will then be requested to make a decision on the two remaining points and approve the agreed-to stipulation.

No written stipulation was submitted to the court, however, and it appears that more than two points remained unresolved at the time of the hearing on child support in May 1992. Having before it statements from Candy and her lawyer to the effect that several issues were unresolved, and having no evidence that the parties had reached an agreement on those issues, the court decided all the outstanding custody and visitation issues based on the position papers, as it had agreed to do at the January 31, 1992 hearing.

We have held that in matters relating to children, the best interests of the children control; therefore, child custody, visitation and support cannot be left to contract between the parties. In re Marriage of Carlson (1984), 214 Mont. 209, 693 P.2d 496; In re Marriage of Neiss (1987), 228 Mont. 479, 743 P.2d 1022. Whether the stipulation is written or oral is unimportant, and even if both parties stipulate to custody, the court is not bound by that stipulation but may instead order a different custody arrangement in accord with the best interests of the children. In

7

re Marriage of Mager (1990), 241 Mont. 78, 785 P.2d 198; In re Marriage of Converse (1992), 252 Mont. 67, 826 P.2d 937.

Here, the parties' stipulation as to custody and visitation would not have been binding on the District Court even if it had been in writing. Therefore, the court was under no obligation to notify the parties that it intended to depart from their alleged oral agreement.

II

Did the District Court fail to provide for the best interests of the children in its custody decree?

Judge Moran's order of August 1992 actually included both a "custody decree" and a modification of the visitation arrangements in Judge Gary's joint custody award of August 1988.

The 1992 order departed from the 1988 order primarily in specifying the months in which each parent could designate the other's visitation days during the following month. It also gave Victor more weekend time with the children during the months that Candy was the physical custodian.

Lacking clarification in the 1992 order itself, we infer that the provision that "Father shall be the primary custodial parent six months of the year" merely refers to control over scheduling of visitation and does not mean that Father is to have physical custody. We base this inference on Judge Moran's findings of fact, in which he stated that the parties have shared custody for the past two years "so that Mother has the children for approximately 215 days per year and Father has the children approximately 150 days per year." He found that "the children have adapted

8

successfully to this amount of shared custody and have prospered by being with each parent a substantial amount of time each month."

These findings indicate that Judge Moran found the previous custodial arrangement to be in the best interests of the children, and that he intended to preserve that arrangement while altering visitation so that Victor had more weekend visitation and more control over the scheduling of visitation. In short, we infer that in the order of August 1992, the phrase "custodial parent" refers merely to control over scheduling of visitation and not to physical custody.

The court's child support order also indicates that it intended its custody order to preserve the ten-month/two-month division of physical custody, as it is based explicitly on the court's expectation that the children would live with Victor five months, not six, each year.

Our standard of review in this case is whether substantial credible evidence supports the court's determination. In re Marriage of Clingingsmith (1992), 254 Mont. 399, 404-405, 838 P.2d 417, 420-421; In re Marriage of Nash (1992), 254 Mont. 231, 234, 836 P.2d 598, 600. Joint custody is presumed to be in the best interests of the child and is awarded to assure the child frequent and continuing contact with both parents. Section 40-4-224, MCA. Physical custody should be arranged as equally as possible between the parents to comply with the express purpose of a joint custody award, with the child's best interest as the primary consideration. In re Marriage of Ulland (1991), 251 Mont. 160, 823 P.2d 864.

The District Court must consider the factors set forth in

9

§ 40-4-212, MCA, in determining whether modification of physical custody is in the child's best interest. Ulland, 823 P.2d at 869; Clingingsmith, 838 P.2d at 421. Candy argues that the court erred in failing to address these factors in its findings of fact and conclusions of law. We disagree. All the statute requires is that the court consider the factors listed. It is not required to make specific findings concerning each element, though it must express "the essential and determining facts upon which its conclusions rest." Ulland, 823 P.2d at 869; Clingingsmith, 838 P.2d at 421.

Here, the essential and determining fact was the court's finding that the Fesolowitz children "have successfully adapted" to shared custody and "have prospered by being with each parent a substantial amount of time each month." The court therefore did not materially alter the amount of time the children would live with each parent--both parents testified that the children had been living with Victor an average of twelve days a month--but instead specified that their time with Victor would include two weekends each month, rather than one.

Candy did not object to the court's findings with regard to the children's successful adaptation, or to the number of days allotted to each parent's visitation or physical custody. Instead, she appears to object primarily to the court's designation of the party who was to control the scheduling of visitation, unfortunately termed the "primary custodial parent" in Judge Moran's order. In her confidential position paper, she requested that she have control over scheduling for seven months, rather than six, and that Victor's visitation include two weekends only in

10

September, October and January.

The court evidently was persuaded by Victor's argument, in his position paper, listing numerous activities that he could not share with his children because they were not with him on most weekends. It found that Candy had used the job-bidding process at Northwest Airlines to confine Victor to one weekend with the children each month, and that this arrangement is "contrary to the best interests of the children, because of their age and good relationship with their father." The court amended the parties' visitation arrangements accordingly.

Section 40-4-224(2), MCA, states that in a joint custody situation, "[t]he allotment of time between the parents must be as equal as possible; however . . . each case shall be determined according to its own practicalities, with the best interest of the child as the primary consideration. . . ." See In re Marriage of Ward (1986), 223 Mont. 401, 725 P.2d 1211 (district court's visitation order, giving the father in a joint custody situation only 75 days of visitation out of a total of approximately 170 non-school days available, was affirmed as a practical method of providing for the child's best interests).

Here, the court produced an order, based on its perception of the Fesolowitz children's best interests, that was adapted to the exigencies of the parents' airline work schedules. We conclude that substantial credible evidence supports the District Court's allocation of visitation time and control over visitation days.

III

Did the District Court err in modifying child support?

11

Both parents requested in 1991 that the court review Judge Gary's 1988 child support order, applying the guidelines. After extensive testimony by the parties and their accountants, the court found that under the guidelines, 23.6 percent of the parents' total combined net resources was to be allocated for child support. Finding that the parents' total combined resources, less reasonable deductions, were $96,036 annually, it arrived at a figure of $22,664 per year for child support.

Candy objects to the court's assessment of Victor's net resources. In particular, she objects to the court's deduction of $27,205 from Victor's income and assets, reflecting losses Victor incurred on his Big Sky condominium and an apartment house in Madison, Wisconsin, and his $7,171 disability insurance premium.

In reviewing an award of child support, we presume that the judgment of the district court is correct, and we will reverse the district court only if it has abused its discretion. In re Marriage of Sacry (1992), 253 Mont. 378, 833 P.2d 1035; In re Marriage of Smith (1990), 242 Mont. 495, 791 P.2d 1373. Here, the District Court heard exhaustive testimony about Victor's rental property and concluded that he had in fact sustained a net loss on that property. Losses of this kind are legitimate business deductions, allowed by the guidelines. Smith, 791 P.2d at 1377.

Disability insurance premiums are not specified as a deduction under the guidelines. In Smith, however, we concluded that the obligor in that case "should be encouraged, as a matter of public policy, to carry disability insurance. . . . Consequently, the Court concludes that the disability insurance premium is a

12

legitimate expense deduction under the guidelines, and is at least partially for the benefit of the minor child." 791 P.2d at 1377.

Candy urges us to distinguish Smith on the grounds that the obligor was a self-employed doctor, while Victor has an employer and "would be covered under Workmen's [sic] Compensation provisions in the event he was injured on the job." We are not persuaded by this argument. Workers' Compensation benefits would be available only if Victor were injured on the job, while his disability insurance covers injuries he might sustain while commuting, driving, skiing, and so on. We conclude that disability insurance benefits the children and that the District Court did not err in allowing Victor to deduct his disability insurance premiums.

Candy argues that in reducing Victor's monthly child support obligation by over $500 a month the court ignored the standard of living the children would have enjoyed had the marriage not been dissolved. This is one of the factors the District Court must consider in awarding child support, under § 40-4-204(2), MCA. See In re Marriage of Anderson (1988), 230 Mont. 89, 748 P.2d 469 (pre-guidelines child support award remanded because it was not commensurate with the father's financial resources and the children's pre-dissolution standard of living).

Here, the total child support award in the 1988 order, adjusted for increases in Victor's salary, was $16,200 per year at the beginning of 1992. In the 1992 order this was increased to $22,664 per year, taking into account increases in Candy's salary as well as Victor's. Victor's monthly payment was reduced partly because Candy's obligation was increased, pursuant to the

13

guidelines, and partly because Victor is, as he testified, providing a fully-equipped home for the children five months out of every twelve.

The District Court found that the total child support award of $22,664 per year was "ample to maintain the children in a lifestyle to which they have become accustomed." We hold that substantial credible evidence supports this conclusion, and that the District Court did not abuse its discretion in determining Victor's child support payments.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

14

May 18, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Rienne H. McElyea
Berg, Lilly, Andriolo & Tollefsen
910 Technology Blvd., Suite A
Bozeman, MT  59715

Edmund P. Sedivy, Jr.
Morrow, Sedivy & Bennett
P. O. Box 1168
Bozeman, MT  59771

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy