No.   92-611

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

KATHLEEN A. KOVASH,

            Petitioner and Respondent,

      and

MYRON J. KOVASH,

            Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

            For Appellant:

                  Mark P. Yeshe, Donahoe & Yeshe,
                  Helena, Montana

            For Respondent:

                  Robert F. Alsobrook, Attorney at Law,
                  Bozeman, Montana

FILED

Filed:   AUG 17 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   May 27, 1993

Decided:   August 17, 1993

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Respondent Kathleen A. Kovash petitioned the Eighteenth Judicial District Court, Gallatin County, for dissolution of her marriage to appellant Myron J. Kovash. After a four-day trial, the District Court issued temporary orders and granted appellant unsupervised visitation with the parties' four children. On August 31, 1992, the District Court issued its Findings of Fact and Conclusions of Law which terminated all contact between the children and appellant, but allowed conditional visitation. Appellant appeals from the order.

We affirm in part and modify the District Court's order.

Appellant presents seven issues for this Court's consideration.

1. Did the District Court err by modifying its December 13, 1991, temporary custody order?

2. Did the District Court err by failing to consider the wishes of the children?

3. Did the District Court err when it terminated appellant's visitation rights?

4. Did the District Court abuse its discretion by ordering the two older children to protect the two younger children?

5. Did the District Court err by not allowing grandparent visitation?

6. Did the District Court violate appellant's constitutional rights by ordering him not to go to Coeur D'Alene, Idaho?

2

7. Did the District Court abuse its discretion when it granted respondent custody of the children?

Myron and Kathleen Kovash were married on October 16, 1976, in Livingston. Four boys were born into the marriage. The parties separated on June 4, 1990.

The marriage was marred with abuse by Myron against Kathleen and the oldest child, J.K. The first incidence of abuse occurred within six months after the marriage. Kathleen testified that Myron would strike her at least three to four times a year. The most severe incidents occurred in the last year of the marriage.

In April 1989, Kathleen testified that while on a boat Myron struck her in the face and almost knocked her into the water, knowing that she could not swim. Following a confrontation over marital problems, in December 1989, Myron assaulted Kathleen over a two-day period and pointed a pistol at her, causing her to fear for her life. Myron again assaulted Kathleen after further problems of the same nature arose. The oldest child, J.K., had to run for aid on both occasions. During the second incident, a police officer had to use force to pull Myron off Kathleen. There are many instances of abuse testified to by Kathleen which Myron denies. The parties sought marriage counseling in Montana.

Kathleen left Myron on June 4, 1990, and resided in a battered women's shelter in Coeur D'Alene, Idaho, for a month. Kathleen obtained temporary restraining orders in both Montana and Idaho, but according to the District Court they have not been satisfactory. The Idaho orders permitted Myron to be with the

3

children, if not Kathleen. The District Court entered a series of orders to keep Kathleen and the children safe, and instituted visits by Myron and his extended family. Upon the recommendation of the supervising social worker, the guardian ad litem, and the child's counsellors, the court suspended visitation and limited telephone contact.

Kathleen testified that during telephone calls Myron usually focused on adult issues, which agitated the children. Myron has told one child on four occasions that he disowned him but later apologized. Kathleen has had difficulty getting the children to accompany her to the Woman's Center for the calls. The children often acted out after the calls, such as by shoving their mother, and one of the children had anxiety attacks.

Dr. Jack Oakwright, a licensed psychologist in Coeur D'Alene, testified that he met with Kathleen and the children following a referral from the battered women's shelter in Coeur D'Alene. Because Kathleen had insufficient funds, the bulk of the therapy was done by Jill Crocker, a master level assistant. Dr. Oakwright testified that the oldest child was damaged the most by physical and emotional abuse inflicted by Myron. He also testified that the child's development in therapy was delayed. Dr. Oakwright expressed concern about reports from a hospital describing Myron as suicidal or homicidal after the incident in December 1989 involving the firearm. Viewing all the medical and psychological reports, Dr. Oakwright saw a consistent pattern where Myron would only submit to treatment as a way of manipulating the return of his

4

wife. Dr. Oakwright also found a consistent pattern diagnosis that Myron was dangerous, suicidal, or homicidal. Dr. Oakwright expressed the opinion, based upon the review of the records and interviews with family members, that Myron represented a danger to the children and needed treatment before having anything other than professionally supervised and monitored visitation. Dr. Oakwright did not interview Myron.

Rob Marchetti, a child protective officer with the Department of Family Services, supervised two telephone visits between Myron and the children. He testified that the telephone visits harmed the children and the abuse was getting worse. He recommended that all contacts by telephone and in person be held in a therapist's office and supervised by the therapist.

Jeannine Newville, the court-appointed guardian ad litem, also testified that the telephone visits were getting worse. She stated that shared custody was not in the best interest of the children. She recommended grandparent visitation.

On June 4, 1990, Kathleen filed her petition for dissolution. A four-day trial was held December 9 through 12, 1991. After the trial, the court issued a temporary order concerning custody, visitation, and restraint of the parties. The court granted unlimited visitation. On August 31, 1992, the District Court issued its findings of fact and conclusions of law and terminated all visitation and contact between Myron and the children, but suspended the termination upon certain conditions. Myron appeals the order.

I.

Did the District Court err by modifying its December 13, 1991, temporary custody order?

Myron argues that the District Court's modification of its December 13, 1991, order violated his right to due process and was an abuse of discretion. He contends that the District Court needed to find a change in circumstances when issuing a final custody order which differed from the temporary order. We disagree.

In its temporary order, the District Court granted Myron unsupervised visitation. On July 30, 1992, the guardian ad litem wrote an addendum which stated that Myron's behavior was not improving because of his regular visits with his sons, and was, in fact, getting worse. The guardian ad litem also stated that Myron was dangerous. When the District Court issued its findings of fact and conclusions of law, it terminated all visitation and contact between the children and Myron. The court did, however, suspend the termination with certain conditions. Myron contends that the court's consideration of the guardian ad litem's report without a hearing to allow Myron to present his arguments was a violation of due process and amounted to an abuse of discretion.

Nothing in the District Court's findings of fact and conclusions of law suggests that the court considered the July 30, 1992, report of the guardian ad litem. The court made extensive findings relating to the guardian ad litem's testimony at trial. A tape recorded conversation of October 21, 1991, between the children and Myron convinced the guardian ad litem that matters

6

were getting worse. The District Court heard this taped conversation and agreed. The guardian ad litem testified that shared custody was not in the best interest of the children, and recommended that Myron have only professionally supervised visitation. We hold that the District Court did not violate Myron's due process rights.

Myron also contends that the District Court needed to find a change of circumstances when issuing its final custody order which differed from the temporary order. We decided a similar issue in In re Marriage of Allen (1989), 237 Mont. 64, 771 P.2d 578. In Allen, the mother had temporary custody of the children for two and one-half years before the District Court awarded custody to the father. We explained in Allen that:

> As expressed in § 40-4-213, MCA, the best interest test is the standard used by the court to award temporary custody. However, the court, upon motion for temporary custody, is only determining the best interest of the child with regard to *temporary* custody pending resolution of the action.
>
> > Temporary child custody is merely an initial determination made to ascertain which of [the] parents will keep children until such time as full hearing on custody can be made.
>
> 27C C.J.S. Divorce, § 642, footnote 30. While district courts must consider the stability of the child's home when it [sic] determines custody, it would nevertheless be inherently unfair to require the temporary non-custodial parent to make a higher threshold showing of changed circumstances before a custody order may deviate from the temporary order.

Allen, 771 P.2d at 580.

In Allen, we quoted the following commissioner's note to § 40-4-213, MCA:

7

[This action] encourages trial courts to issue temporary custody orders without formal hearing whenever possible. Since the hearing itself may be a traumatic event for both parents (and therefore for their children, indirectly), the trial court is authorized to make temporary orders on the basis of affidavits alone unless one of the parties files formal objection to that procedure. In most cases, it is expected that trial judges will award temporary custody to the existing custodian so as to minimize disruption for the child.

Allen, 771 P.2d at 581.

If changed circumstances are required to be proven before modifying temporary custody orders, parents would be forced to litigate temporary custody. This result would be contrary to the purpose of the statute. Therefore, we hold that the District Court was not required to find a change in circumstances before modifying the temporary custody order.

II.

Did the District Court err by failing to consider the wishes of the children?

Section 40-4-212(1)(a) and (b), MCA, requires the court to consider the wishes of the children when determining custody. The District Court interviewed the children before the December 1991 hearing. The court also interviewed the second child during the March 5, 1992, hearing. All the children testified that they wanted to visit their father, but that they did not like the telephone calls because of Myron's behavior.

The guardian ad litem, the children's counselor, and the children's social worker recommended that Myron only have supervised visitation. The court did not order supervised

8

visitation. Instead, it gave Myron conditional visitation with his children for Christmas 1992 and for the month of July 1993. The court ordered weekly telephone visitation and restricted it so that the children would not have to discuss "adult issues." The court granted the children the authority to terminate the telephone calls after 15 minutes.

The district court need not make a specific finding on each statutory element. In re Marriage of Arrotta (1990), 244 Mont. 508, 513, 797 P.2d 940, 943. The court must show that it has considered each element by making specific findings regarding the best interests of the children. Arrotta, 797 P.2d at 943. The district court is not required to award custody or visitation based upon the child's preferences. Arrotta, 797 P.2d at 943. The order attempted to balance the children's wishes against what was in their best interest. We conclude from reading the record, and from the District Court's extensive findings, that the children's wishes were properly considered when conditional visitation was granted.

III.

Did the District Court err when it terminated Myron's visitation rights?

As stated previously, Myron's contact with his children was suspended with conditions. Myron was still allowed visitation with his children but was required to meet specific conditions relating to the weekly telephone calls. If he complied with these conditions, he was given the opportunity to visit the children during the Christmas holidays. If the Christmas visitation

9

proceeded without incident, then Myron was allowed to have one month's worth of visitation during the summer. If Myron did not meet these guidelines, the court would terminate his visitation rights. The court's use of the carrot and stick approach was an effort to curb Myron's behavior toward his children and foster a more healthy relationship. It does not amount to a termination of visitation rights. We hold that the District Court did not abuse its discretion in placing conditions on Myron's visitation.

IV.

Did the District Court abuse its discretion by ordering the two older children to protect the two younger children?

In view of the testimony and evidence produced during the proceedings, the court was concerned about the safety of the children. The court interviewed the boys and felt that it was appropriate to have the older children supervising visitation and protecting the younger ones. Dr. Oakwright testified that it would be in the best interests of the children to allow them to initiate the telephone contacts and to terminate the telephone calls with their father. We hold that the District Court did not abuse its discretion.

V.

Did the District Court err by not allowing grandparent visitation?

Section 40-4-217(2), MCA, allows the district court to grant grandparent visitation if it finds that it is in the best interests of the children. In this instance, the District Court granted

10

grandparent visitation, but they could only exercise their rights simultaneously with Myron. We hold that the District Court did not abuse its discretion in granting the grandparents visitation.

VI.

Did the District Court violate Myron's constitutional rights by ordering him not to go to Coeur D'Alene, Idaho?

Myron contends that the court's order restraining him from going to Coeur D'Alene is too broad and infringes on his constitutional right to travel. We agree. The order is overly broad in the sense that it does not consider that Myron may have other business in Coeur D'Alene or that he may be travelling through the city.

There is substantial evidence in the record to support the conclusion that when Myron travels to Coeur D'Alene, Kathleen and the children are subjected to harassment. The intent of the order is to keep Myron away from Kathleen and the children until the court finds it appropriate to lift the restraining order. We hold that the portion of the court's order preventing Myron from traveling to Coeur D'Alene is too broad and should be stricken. We affirm those portions of the order that intend to keep Myron away from Kathleen and the children.

VII.

Did the District Court abuse its discretion when it granted Kathleen custody of the children?

Our standard of review in custody matters is whether substantial credible evidence supports the court's determination.

11

In re Marriage of Fesolowitz (Mont. 1993), 852 P.2d 658, 662, 50 St. Rep. 575, 578. The law presumes that joint custody is in the best interest of the child. Courts award joint custody to assure the child frequent and continuing contact with both parents. Section 40-4-223, MCA. Physical custody should be arranged as equally as possible between the parents, with the child's best interest as the primary consideration. Fesolowitz, 852 P.2d at 662. The District Court must consider the factors set forth in § 40-4-212, MCA, when determining which parent receives custody.

Here the court granted custody of the children to Kathleen. During trial, Dr. Oakwright testified that Myron was "dangerous to the welfare of his children and needs treatment before he should be allowed anything but the most closely and professionally supervised visitation." He recommended that Kathleen have sole custody. Mr. Marchetti recommended that Myron have physical visitation only in a therapist's office with an emphasis on therapy helping Myron in not being abusive. The guardian ad litem recommended that Kathleen have custody of the children. We hold there is substantial credible evidence to support the Court's conclusion that it is in the best interest of the children that Kathleen be granted custody.

We affirm all issues except as to the modification of the portion of the order that prohibits Myron from traveling to Coeur D'Alene, Idaho.

_____
Justice

12

We concur:

_____
        Chief Justice

_____

_____

_____
Justices

13

August 17, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mark P. Yeshe
DONAHOE & YESHE
P.O. Box 413
Helena, MT  59624

ROBERT ALSOBROOK
Attorney at Law
225 E. Mendenhall
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy