No. 02-440

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 106N

IN RE
DOMENICO VINCENZO CIANCIOTTO,

   a Minor Child,

JOSEPH S. MARKS,

   Petitioner and Cross-Appellant,

and

EDNA KATHERINE KENT,

   Respondent and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
        In and for the County of Lewis and Clark, Cause No. BDF-90-923,
        The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

   For Respondent and Appellant:

      Edna K. Kent (pro se), Missoula, Montana

   For Petitioner and Cross-Appellant:

      Mark P. Yeshe, Attorney at Law, Helena, Montana

             Submitted on Briefs: January 9, 2003

                Decided: April 24, 2003

Filed:

    _____
         Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     The Petitioner, Joseph Marks, moved the District Court for the First Judicial District in Lewis and Clark County to modify an existing parenting and visitation plan for Domenico (Dominic) Cianciotto.  The Respondent, Edna Kent, is Dominic's primary custodian.  The District Court modified the parties' parenting plan, scheduled visitation between Joseph and Dominic, and placed restrictions on conversations that Joseph could have with Dominic. Edna appeals the District Court's order and Joseph cross-appeals.  We affirm in part, and reverse in part, the order of the District Court.

¶3     The issues on appeal are whether the District Court abused its discretion when it ordered visitation on one Sunday per month between Dominic and Joseph and limited what Joseph and other members of his family could say during those visits.

FACTUAL AND PROCEDURAL BACKGROUND

¶4     Joseph and Edna are the natural parents of Dominic, who was born on May 18, 1989. Dominic is in the primary custody of Edna, who lives with her husband Steve Kent, whom she married in 1995.  Joseph has joint custody of Dominic, pursuant to the District Court's original decree issued on May 31, 1990.

¶5 Since March 1990, Joseph and Edna have periodically modified their parenting plan with respect to visitation and support. In 1993, Edna, Steve, and Dominic were "born-again" as Christians, decided to home school Dominic, and all three are very involved with their church and church activities. Dominic attends church activities each Thursday and Sunday.

¶6 The parties have very different lifestyles and religious views, which have contributed to sporadic visitation between Joseph and Dominic. On May 23, 2000, Joseph filed a motion with the District Court for a new parenting plan, an appointment of a guardian *ad litem*, and a parenting evaluation.

¶7 On November 16, 2000, the District Court granted Joseph's motion for a guardian *ad litem* and appointed Sara McKiernan to serve as Dominic's guardian and to provide a recommendation to the court regarding a parenting plan and Dominic's best interests. The District Court also granted Joseph's motion for a parenting evaluation and ordered the parties to submit to an evaluation by Philip Bornstein, Ph.D. Bornstein met with the family and provided a report of his findings and conclusions to McKiernan and the court. McKiernan also met with the family several times, together and individually, and provided a report to the District Court on February 14, 2001.

¶8 In McKiernan's report, she stated that Joseph and Edna were amiable people, but that their openly-expressed negative feelings toward each other as well as their religious and lifestyle differences had placed unnecessary stress on Dominic. McKiernan's report provided a suggested parenting plan that would gradually re-involve Joseph in Dominic's life.

¶9 On June 6, 2001, the District Court considered McKiernan's and Bornstein's reports, had a discussion with Dominic on April 12, 2001, and ordered a parenting plan that established visitation between Joseph and Dominic. The District Court ordered visitation for Joseph with Dominic on four Saturdays beginning June 16, 2001. If McKiernan determined it was in Dominic's best interests, the court ordered that Joseph be allowed visitation with Dominic from Friday until Sunday morning on alternate weekends.

¶10 On December 10, 2001, McKiernan sent a letter to the court to inform it that the original parenting plan, which required her to consult with Dominic before arranging visitation, was too "overwhelming" for Dominic and suggested that Joseph and Edna make arrangements for visitation. The parties were unable, however, to agree on arrangements for visitation, and the District Court requested that McKiernan provide a visitation schedule for Dominic. On February 25, 2002, McKiernan recommended that Joseph visit, from Friday to Saturday one weekend per month and Friday until Sunday evening one weekend per month. McKiernan noted that extending Joseph's visit until Sunday evening would cause Dominic to miss attending church activities once per month.

¶11 The District Court entered an order on February 27, 2002, informing the parties of its intent to adopt McKiernan's schedule. Neither party appealed the District Court's order regarding its intent to adopt McKiernan's schedule. However, Joseph requested a clarification to set forth the exact hours for each visit, and on April 8, 2002, Edna filed a response to Joseph's request, stating that the District Court should amend the parenting plan to accommodate Dominic's need and desire to attend church on Sundays.

4

¶12 On May 9, 2002, the District Court entered its order adopting McKiernan's schedule, with some adjustments to reflect the exact visitation hours that Joseph should have with Dominic. Edna filed a motion to reconsider, which the District Court denied on June 6, 2002. Edna appealed the order of the District Court on June 10, 2002, and Joseph cross-appealed on June 20, 2002.

## STANDARD OF REVIEW

¶13 We review a district court's findings of fact to determine whether they are clearly erroneous. *In Re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 15, 307 Mont. 60, ¶ 15, 36 P.3d 874, ¶ 15. Findings of fact are clearly erroneous where they are not supported by substantial credible evidence, a district court misapprehends the effect of the evidence, or where review of the record convinces this Court that a mistake has been made. *Arneson-Nelson*, ¶ 15. We will reverse a district court's decisions related to the modification of the custody or visitation of a child only where a clear abuse of discretion is demonstrated. *Arneson-Nelson*, ¶ 15.

## DISCUSSION

### ISSUE 1

¶14 Did the District Court abuse its discretion when it ordered Sunday visitation between Dominic and Joseph?

¶15 The District Court provided for visitation on every other weekend with the second monthly visitation to take place between 7:00 p.m. on Friday and 7:00 p.m. on Sunday. As

5

a result, Dominic cannot attend church activities on Sunday one weekend each month. The District Court noted in its order that:

> The Court is quite concerned about Dominic's religious beliefs and the respect to which they are entitled. The schedule announced above may conflict with Dominic's scheduled religious observations. Unfortunately, that is what must occur in cases such as this. However, the Court would hope that Joseph would have a great deal of respect for Dominic's deeply held religious convictions and do his best to see that they are accommodated.

¶16 Edna contends that the District Court abused its discretion when it ordered that Dominic visit with Joseph on one Sunday per month because it failed to provide specific findings of fact with respect to Dominic's wishes concerning visitation with Joseph. Edna also contends that the District Court's order interferes with Dominic's wishes and his constitutional right to the free exercise of religion.

¶17 Joseph contends that the District Court did not need to make specific findings regarding Dominic's wishes because both parties were aware of his wishes, and that the District Court did not need to comply with Dominic's wishes when it implemented a parenting plan that reflected Dominic's best interests. In addition, Joseph contends that the visitation on one Sunday per month, even if it is an infringement upon Dominic's exercise of religion, was not an abuse of discretion if in Dominic's best interest.

¶18 When determining a parenting plan for a child, § 40-4-212, MCA, provides that a District Court must consider the wishes of the child, although a district court is not required to determine visitation based on a child's preferences. *In Re Marriage of Arrotta* (1990), 244 Mont. 508, 513, 797 P.2d 940, 943. We have held that where a district court has interviewed a child as to his or her wishes with respect to custody, that a district court must consider the

6

wishes of a child and must make a specific finding as to that child's wishes. *In Re Marriage of Kaasa* (1979), 181 Mont. 18, 24, 591 P.2d 1110, 1114; *In Re Marriage of Kramer* (1978), 177 Mont. 61, 69, 580 P.2d 439, 444. We have applied the same standard to cases involving visitation with a noncustodial parent. *Custody of Maycelle D.* (1984), 213 Mont. 225, 229-30, 691 P.2d 410, 412.

¶19 We also held in *Maycelle* that if a district court decides to not follow the child's wishes, the district court should state in its findings the reasons that it did not follow the child's wishes. *Maycelle*, 213 Mont. at 230, 691 P.2d at 412. However, where the record clearly indicates what a child's wishes are, there is no need for a district court to publish specific findings as to the child's wishes. *In Re Marriage of Arbuckle* (1990), 243 Mont. 10, 14, 792 P.2d 1123, 1125. In *Arbuckle*, we explained the policy behind the directive to district courts to provide a record of their interviews with children as follows: "[w]ithout the record of the interview and without specific findings as to the wishes of the children, counsel and this Court do not know with any degree of certainty the basis for the District Court's conclusions on custody matters." *Arbuckle*, 243 Mont. at 14, 792 P.2d at 1125 (quoting *In re Marriage of Brown* (1978), 179 Mont. 417, 425-26, 587 P.2d 361, 366).

¶20 The record in this case clearly shows that both parties were aware of Dominic's wishes. The reports from Dr. Bornstein and McKiernan, as well as the statements by Joseph and Edna show that Dominic wishes to have visitation time with Joseph, but that he also would like to pursue his church activities on Thursdays and Sundays and would like to

7

participate in them as much as possible, even if that means that he will miss some visitation time with Joseph.

¶21 Edna contends that, in light of Dominic's wishes, the District Court erred when it failed to specifically state its reasons for not following Dominic's preferences for visitation. However, we note that the District Court's order that established Dominic's parenting plan explicitly adopted McKiernan's February 25, 2002, recommendation for visitation, which stated, "it is my belief that Dominic's best interests will be served by setting a schedule that does not involve him in any planning or decision making." In part, that conclusion was based upon her prior December 10, 2001, report to the court where she expressed her opinion that the previous parenting plan was not in Dominic's best interests. McKiernan stated:

> It is my opinion, and it could very well be in error, that the stress of "choosing" his visitation is becoming overwhelming for Dominic. . . . It may make Dominic's life much easier if the burden of his being in charge of visits comes to an end. I truly believe that now is the time for the parents to do the scheduling and communicating between themselves, and neither Joe Marks nor Edna Kent [are] in disagreement with this.

Accordingly, we conclude that the District Court did provide sufficient information in its order to explain why it disregarded Dominic's wishes.

¶22 We will next consider whether the District Court abused its discretion by not following Dominic's preferences and whether its parenting plan violated Dominic's right to the free exercise of religion by providing for visitation between Joseph and Dominic on Sunday evenings. Section 40-4-227(1), MCA, provides that:

> It is the policy of the state of Montana:
> (a) to recognize the constitutionally protected rights of parents and the integrity of the family unit;

8

(b) to recognize a child's constitutionally protected rights, including all fundamental rights unless those rights are specifically precluded by laws that enhance their protection; and
(c) to ensure that the best interests of the child are met in parenting proceedings.

¶23   We recognize that a district court, pursuant to the criteria set forth in § 40-4-212, MCA, may consider "all relevant parenting factors" when determining a parenting plan based upon the best interests of a child.  In *In Re Marriage of Ulland* (1991), 251 Mont. 160, 169, 823 P.2d 864, 870, we stated:

> The trial judge is singularly equipped to assess a young child's ability to formulate and articulate her custody wishes and weigh that preference in light of the other evidence and factors enumerated in § 40-4-212, MCA.  *In re Marriage of Merriman* (Mont.1991), 807 P.2d 1351, 1354, 48 St.Rep. 275, 276.  A child's expressed wishes are not determinative of best interest. *Marriage of Merriman,* 807 P.2d at 1354, 48 St.Rep. at 276.

Following the policy guidelines set forth in § 40-4-227(1), MCA, and the determination of a child's best interests set forth in § 40-4-212, MCA, the District Court concluded that it was in Dominic's best interests to visit with Joseph from Friday until Sunday evening, one weekend each month, despite Dominic's desire to attend church.  The record amply supports that spending additional time with Joseph was in Dominic's best interests.  We conclude that the District Court did not abuse its discretion when it ordered Sunday visitation between Joseph and Dominic, despite Dominic's wishes to attend church activities.

¶24   While Edna contends that the visitation schedule violates her and Dominic's rights to freely exercise their religious beliefs, Joseph also has a constitutional interest in the parent-child relationship.  *See Santosky v. Kramer* (1982), 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599.  Edna has cited no authority to suggest that the District Court

9

improperly balanced those competing interests. Rule 23(a)(4), M.R.App.P., requires that she do so before we may disturb the District Court's conclusion.

¶25    For these reasons, we conclude that the District Court did not abuse its discretion when it ordered Sunday visitation between Joseph and Dominic, and we affirm the decision of the District Court on direct appeal.

ISSUE 2

¶26    Did the District Court abuse its discretion when it admonished Joseph and his family members to not discuss religion and other matters with Dominic?

¶27    The District Court also stated in its parenting plan that "[t]he Court again admonishes Joseph and his family to not discuss Dominic's church, religious views, court matters, or Edna and her new husband."

¶28    Joseph contends that the District Court's admonishment was an overly broad restriction on his right to free speech and that the District Court lacked the jurisdiction to restrain his family members' speech because they are not parties to this matter. Edna admits that the District Court's restriction is overly broad "and should be made specific as to any restrictions it places on Joe's speech with respect to his conversations with Dom."

¶29    While the District Court's use of the word "admonish" suggests that the District Court intended to warn Joseph and his family, rather than order Joseph and his family to refrain from engaging in certain conversations with Dominic, to the extent that the District Court's Order implies such a directive, we agree with the parties that the District Court's admonishment, as an order to Joseph and his family members, was overly broad. First, it

10

is apparent that Joseph's family members are not subject to these proceedings, and the District Court lacked the authority to regulate their speech or conduct. In addition, to the extent that the District Court's admonishment prohibits Joseph from expressing his own views as a parent, it is also an overly broad restriction. We have held that a state may, in limited circumstances, regulate speech where the curtailment is necessary to advance a significant and legitimate state interest. *State v. Lance* (1986), 222 Mont. 92, 103, 721 P.2d 1258, 1266. The State's interest in this case is the promotion and protection of Dominic's best interests, and is a significant and legitimate state interest. However, precluding Joseph from engaging in any form of discussion of the matters listed in the admonishment is not necessary to protect Dominic's best interests.

¶30    Joseph agrees that the District Court can and should restrict a parent's speech where it is detrimental to a child's best interests, and further agrees that the District Court could require him to discuss the mentioned subjects "in a respectful manner." In addition, it follows that Joseph has the duty to promote Dominic's best interests by protecting him from disparaging comments by Joseph's friends and family regarding these family matters. Accordingly, we reverse the decision of the District Court to the extent that it unnecessarily restricted Joseph's right to freely express his own views and remand to the District Court to reformulate appropriate instructions which may be necessary for Dominic's best interests but do not unnecessarily restrict Joseph's right to freely express his own religious beliefs or disbelief, or otherwise unduly restrict his right to free expression.

11

¶31     For the foregoing reasons, the decision of the District Court is affirmed in part,

reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER